JOSEPH T. ARNOLD, *et als.* Appellants, *vs.* EDWARD WAIN-
WRIGHT, Respondent.

### APPEAL FROM THE DISTRICT COURT OF NICOLLET COUNTY.

The real estate of a partnership is in equity treated as mere personalty, and governed by the rules and doctrines applicable to that species of property.

Whether land is to be deemed part of a partnership stock depends upon the agreement of the partners, which agreement may be either express or implied.

Lands may be converted into partnership stock by parol agreement of the partners, or by such facts and circumstances attending its acquisition or use, as will raise an implication that the partners so intended. The legal estate will be controlled by the terms of the conveyance, but equity will subject the lands to the same liabilities imposed upon other partnership estate, and restrict the partners to the same extent in their disposition of them as obtains in regard to the personalty.

The Statute, pages 382-3-4, although designed to do away with some trusts that would otherwise result, was not intended to cut off trusts in favor of a partnership, where the lands are conveyed to the individual members of the firm as tenants in common. Nor does the recognition of such a trust conflict in any manner with the Statute of Frauds. Such a trust, while it will be enforced against a purchaser or mortgagee, from one of the co-partners or his representatives, who has notice, actual or constructive, that the land is partnership property, cannot be enforced against a *bona fide* purchaser or mortgagee without such notice.

This was an appeal from an order overruling a motion for judgment on the pleadings made by the Defendants in the Court below. The Appellants' points disclose the grounds of the motion for judgment.

Points and Authorities of Appellant.

V.—All the rights and interests which the Plaintiff claims in the premises described in the complaint, adverse to the rights and equities of these Defendants respectively therein, rest upon an alleged oral contract of partnership, which, so far as it affects the title to the said real estate, is void by the statute of frauds. *Compiled Stat.* 457, *chap.* 49, *sec.* 6. The deed or conveyance mentioned in that section must conform to the provisions of the statute of deeds, &c. *Comp. Stat.* 397, *chap.* 35.

VI.—While the Plaintiff claims equities in the premises

on the ground that the same were and are the property of the alleged partnership, (and he does not claim any other right therein, adverse to these Defendants) he wholly fails to show that the said premises are or ever were the property of the alleged partnership, as such. He fails to show that the property was ever converted into partnership stock or capital. He fails to show that the property was purchased with partnership funds ; but on the contrary, he does show, that at the time of the purchase of the different parcels of the premises, there were no partnership funds or capital,—that there had not then been any partnership formed,—that the said premises were purchased in different parcels, at different times, and by different members of the alleged partnership, with their own separate and respective individual funds,—that the said parcels thereof were owned by them respectively in severalty prior to and at the time of the alleged formation of the alleged partnership. He also shows that the alleged conversion of the premises into partnership stock, was made by oral agreement only. These facts do not operate a conversion of real estate into partnership capital, though they be followed by a partnership user. *Coles vs. Coles*, 15 *John. Rep.*, 159; *Dyer vs. Clark*, 5 *Met. Rep.*, 562; 1 *Am. Lead. Cas.*, 336; 12 *Leigh's Rep.*, 265; *Frank vs. Branch*, 16 *Conn. Rep.*, 261; *Hale vs. Henrie*, 2 *Watt's Rep.*, 143; 1 *Lead. Cas. in Eq.*, 155, 158; *Randall vs. Randall*, 3 *Sim. Rep.*, 271; 1 *Crabb on Real Prop.*, sec. 78; *Thornton vs. Dixon*, 3 *Bro. C. C.*, 199; *Cookson vs. Cookson*, 8 *Sim. R.*, 529; *Baldwin vs. Shore*, 9 *Ves. R.*, 500; *Bell vs. Phyn*, 7 *Ves.*, *R.*, 453; *Watson on Part.*, 82; 2 *Montague on Part.*, 212; *Smith vs. Smith*, 5 *Ves. R.*, 189; *Smith's Mercantile Law*, (*Hol.* & *Ghol. Ed.*) 53, *note; Collyer on Part.*, sec. 135 to 160; *Comynon Cont.*, 533 to 540; *Ripley vs. Waterworth*, 7 *Ves. R.*, 425.

VII.—An original contribution or appropriation of real estate by one partner to partnership stock or capital, cannot, by the law, be made by parol, or otherwise than by conveyance or covenant in such form as to operate a conversion of such property to such stock or capital, and charge it with a trust to the use of the partnership. As there cannot be, at law, a partnership in the title to real estate, it is only through the

medium and operations of a trust, that it can be converted into personal assets and administered as partnership property. Such trust cannot result or be implied unless the fund invested in the property, has been previously charged with it, so that equity may follow, seize upon and administer the trust with which the fund thus invested in the real estate was charged. Hence, in the absence of such pre-existing trust upon the fund, from which a trust upon the real estate purchased with it, will result, a conveyance or covenant competent to create such trust, without which a conversion cannot be effected, becomes absolutely necessary. Both the statute of frauds and the statute of uses and trusts require it, if indeed the statute of uses and trusts does not prohibit it altogether. *Comp. Stat.*, 382, *ch.* 32, 457, *ch.* 49, *sec.* 6; 5 *Met. Rep.*, 562; 1 *Am. Lead. Cas.*, 336, *&c;* 1 *Lead. Cas. in Eq.*, 155, *&c; and other authorities before cited*; 1 *Parsons on Cont.*, 125 to 131.

VIII.—The conveyances described in the Plaintiff's complaint, by which the Plaintiffs, Alfred F. Howes and John L. Howes, became tenant in common of the premises, being absolute in terms to convey the unconditional and unqualified title or estate in fee to the grantees named therein, repel and destroy all presumption of any trust therein to the use of the alleged partnership ; and such trust does not, nor can, by the law, result from any fact or combination of facts alleged by the Plaintiff in his pleadings ; nor can such a trust be engrafted upon those conveyances by parol evidence, for the purpose of converting such estate into personal estate to be administered as partnership assets. Such conversion involves a change of title, and the creation of both a trust estate and a lien,—a change of the absolute deeds conveying the title, into mere declarations of trust. That cannot be done by parol, but requires, at least, a covenant. *Comp. Stat.*, 382, *ch.* 32; 397, *ch.* 35; *and* 456, *ch.* 49. Many of the authorities before cited sustain this poposition,—and in every case in which there has been an original contribution of real estate to partnership capital, such contribution has been made by covenant,—generally in the sealed articles of partnership.

IX.—To effect a conversion of real estate into partnership

capital as an original contribution thereto, it is necessary that the means of an actual conversion thereof for the purposes of application to partnership uses, or of distribution among the partners, should be provided by the deed, otherwise it is not converted. 1 *Lead. Cas. in Eq.*, 161, and cases there cited; *Collyer on Part.*, 93, 2d Ed. The reason is obvious, for the power of actual conversion must accompany the trust, and in such case both the trust and the power must be derived from the deed, and cannot result by implication of law. In this case the deeds do not contain either the declaration of the trust or the power.

X.—Though the said property had been, in equity, converted into partnership capital, the partners were tenants in common of the legal title, free and unaffected by the trust to the use of the partnership, until the business of the partnership had commenced and so operated as to create an interest or liability, to uphold the trust. The object of the partnership as stated in the complaint was "the establishment of a forwarding, commission, warehouse and storage business." When that business was established the Plaintiff fails to show, and until the business was established, the partnership rights and liabilities did not commence. *Murray vs. Richards*, 1 *Wend. Rep.*, 63; 1 *Smith's Lead. Cas.*, (*Hare & Wal. Ed.*) 735; 9 *John. Rep.*, 488.

It does not appear that any "forwarding, commission, warehousing or storage business" had been done, at the time of the execution, or recording of either the mortgage to Arnold, or the mortgage to A. F. and S. R. Howes.

XI.—The trust to the use of the partnership, with which partnership property is encumbered, ceases with the settlement and extinction of all partnership liabilities, *inter se* and to third persons. Only such liabilities uphold the trust, and when they cease the trust ceases, and the partners are tenants in common of the partnership property, discharged of the trust. The authorities cited sustain this position. It is in fact self-evident. In case of dissolution of the partnership, the settlement of the accounts and the disposition of the property must be as of the day of the dissolution. *Stoughton vs.*

*Lynch*, 2 *John. Ch. Rep.*, 209; *Dyer vs. Clark*, ·5 *Metcalf's Rep.*, 562.

The Plaintiff fails to show at what time he considered the firm dissolved. He treats the point strangely, and seems to regard the firm yet in being, and still in full and active business as such, for some purposes, while for others he treats it as long since dissolved.

If it ever existed at all for the purposes or in the business specified in the complaint, it was, if the real estate belonged to it as such, dissolved on the 26th August, 1857, when the mortgage to Arnold was made, or certainly when that mortgage was recorded on the 15th February, 1858.

Consequently, the mortgage to Arnold and the subsequent mortgage and conveyances were taken by the mortgagees and grantees, subject only to the state of the partnership accounts at the date of the mortgage to Arnold or the date of the record thereof; and it does not appear by the Plaintiff's pleadings that there was then any partnership liabilities or that the partnership business had commenced, but it does appear in the answer of Defendants, A. F. and J. L. Howes, that such business did not commence till March, 1858. It follows that even though the property had been converted into partnership capital, there were not at the time of the dissolution, any partnership dealings or liabilities to uphold the trust to the use thereof. The onus of alleging and proving that such liabilities did then exist, rests upon the Plaintiff, for they are necessary to sustain the interest which he claims.

Points and Authorities of Respondents.

V.—To the fifth point raised by Defendants' counsel, we reply, that these Defendants now before the Court for the purposes of this motion are not parties to any oral contract with the Plaintiff, by which the title, interest or estate, or the conflicting rights and equities in or to any real estate claimed by the Plaintiff to be partnership capital can be affected as between them and this Plaintiff by any statute of frauds. It has recently been held in Maine, that notwithstanding the statute of frauds a parol trust might exist and be proved by

parol against third persons as creditors.   The statute, as was said, was not intended to prevent the voluntary execution of such a trust, but only its enforcement against the trustee ; and where it has already been executed even this saving clause cannot apply, and such trust would be good as against everybody.   *Brown vs. Lunt*, 37 *Maine*, 434; *Hill on Trustees*, 87, *note* 1.

If the contract, though oral, was made and executed or in part executed immediately thereafter, the statute of frauds, in a court of equity, will not render the contract void, but will aid and enforce the contract.   If such a contract was made, as alleged in the complaint, and executed, or in part executed, the real estate embraced by the contract, became in equity the personal property of the partnership, and the several partners representing the undivided interests therein sustained to each other the relation of trustee and *cestui que trust*.   The real question then is, "Was there a partnership, and were the lands put in by the partners capital stock and so regarded by them, as set out in the complaint?"   If so, then the statute of frauds has no application, and the property of the partnership will be liable, first to the claims of general creditors ; secondly to the claims of partners, and lastly to the separate claims of the creditors of the separate partners.   *Comp. Stat. Minn., p.* 457, *sec.* 10,—*p.* 382, *sec.* 6; *Foster vs. Hale,* 5. *Ves., Jr., p.* 308; 3 *Vesey,* 696; *Dale vs. Hamilton,* 26 *Cond. Eng. Ch. R.,* 368; *Sumner vs. Hampton,* 8 *Ohio,* 340 *and* 364; 1 *Story's Eq. Jur.,* secs. 674-5-6; 2 *Ibid.,* 759, 761; *Smith on Cont., p.* 69, 71; *Gow on Part., ch.* 2, *sec.* 1, *p.* 32, 36; *Story on Part., secs.* 82-3, 93; *Collyer on Part., p.* 80, 72, 76; *Kent, p.* 37-8-9; *Adams' Eq., side page* 35; 5 *Cond. Eng. Ch. R.,* 382, (*Fariday vs. Wrightson*); *Dyer vs. Clark,* 5 *Metcalf,* 562 *and* 582; *Crooker vs. Crooker,* 46 *Maine R.,* (*American Law Reporter, Vol.* 9, *July,* 1861, *p.* 539); *Smith vs. Burnham,* 3 *Sumner,* 435, (*over-ruled*); 1 *Lead. Cas. in Eq., under Lake vs. Craddock,* 155, 1st *Ed.*; *Robinson vs. Crowder,* 4 *McCord R.,* 519. *Cases where the questions arose between the representatives and the heir, and case of agreement express or implied*; *Balmain vs. Shore,* 9 *Ves.,* 500; *Smith vs. Smith,* 5 *Ves.,* 189; *McIntosh vs. Davayness, quoted in Montague on Part., Vol.*

1, *p.* 97; *Bell vs. Phynn,* 7 *Ves.,* 453; *Ripley vs. Waterworth,* 7 *Ves.,* 425; *Green vs. Green,* 1 *Ohio,* 534; *Collyer on Part., p.* 72, 74, 76; *Sigourney vs. Munn,* 7 *Conn. R.,* 11; 8 *Ohio, as to the opinion of the Chancellor in this case, p.* 336-7; *Goodwin vs. Richardson,* 11 *Mass. R.,* 469, *commented on in* 3 *Kent,* 38·9, 41; 4 *Warden, (Ohio,)* 1.

VI.—One-half of the real property in this case was purchased and the whole put in, as part and parcel of the capital stock as will appear in evidence from the partnership books. Notwithstanding these facts appear on the pleadings, the counsel for the Appellants in the sixth point assume the following positions: "That while the Plaintiff claims equities in the premises on the ground that the same were the property of the alleged partnership as such, he fails to show that the property was ever converted into partnership stock. He fails to show that the property was purchased with partnership funds," &c.

It appears that a part of the real estate, bought and paid for by Wainwright was transferred to the Defendants Alfred F. and John L. Howes, under the impression that such an exchange and equality of interest by deed and upon the record was necessary to perfect the ownership of the property in the firm. The partnership is not only alleged, but admitted by the Defendants Alfred F. and John L. Howes; and Alfred F. Howes in his answer admits his liability to the creditors of said firm, but claims that his relation in the premises was only that of a tenant in common. But it matters not what legal deductions the Defendants or Plaintiff may draw from these facts; such deductions do not affect the facts themselves nor the legal consequences flowing from them. The pleadings show fully that the object of the formation of the copartnership was "the establishment of a forwarding, commission, warehousing and storage business in St. Peter." To this end all necessary precedent acts must be construed as contributing. The purchase and dedication of real estate as a location and the erection of a proper building as the place of business, necessarily preceded the business itself. These acts of the copartnership, the purchase by Wainwright, the distribution of the title, the purchase of materials, and the giving of the

partnership notes therefor, the erection of the building thereon, and the entry of the valuation of their several contributions of the real estate to the capital stock by each on the partnership books, were the natural and necessary steps of the partnership in arriving at the object of the formation of the co-partnership. These several acts themselves done with the assent and approval of the several parties would constitute an implied partnership without other evidence of contract, and subject the property thus acquired and used, to all the liabilities of the co-partnership in the particular business thus indicated. But in addition to the acts of the parties in this case, we have positive allegations in the complaint, and the admissions of the other partners that the partnership did exist. The partnership being admitted, the other Defendants, Arnold, Swift, Samuel R. and George E. Howes, are charged with actual knowledge and notice of the fact of the co-partnership, and in equity deal with it under this notice, subject to all its consequences. *Dob vs. Halsey*, 16 *John.*, 34; 6 *Blackford*, 388; 10 *B. Monroe*, 493; 46 *Maine R.*, 250, *Croker vs. Croker*.

It is true that in almost all the cases, real property has been purchased by a partnership already existing, and with the funds of the partnership thus formed, but that cannot alter the principle, as has been most conclusively shown in the case of *Dale vs. Hamilton*, 26 *Eng. Ch. R.*, 368, to which case we invite the particular attention of the Court, because in its leading facts it is similar to this case.

There is great diversity of judicial opinion on the question whether real estate, though bearing the character of personalty as between the partners themselves, is to be treated as real or personal estate as between the heir and personal representatives of a deceased partner.

Mr. Bisset, in his treatise on the law of partnership, deduces from an elaborate examination of the English cases, the following general conclusions:

1. " That in the absence of any specific agreement to the contrary, real estate purchased with partnership funds, for partnership purposes, is converted out and out into personal estate, and therefore goes to the personal representative, and not to the heir of a deceased partner.

2. "That real estate purchased with partnership property, but not for partnership purposes, is not converted into personalty.

3. "That real estate, brought into partnership by a partner, under an agreement that during the partnership, and if necessary for partnership purposes, after the expiration thereof, it should be considered as personal estate, but not purchased with partnership funds, and not required to be sold for payment of debts, or for any of the other purposes of the partnership, is not converted into personal estate as between heirs and personal representatives. .

4. "The real estate devised to partners is not partnership property, though used for partnership purposes.

5. "That though partners purchase with partnership funds, the equity of redemption of mortgages devised to them, the equity of redemption follows the mortgage, and does not become partnership property."

"At law, however, real estate owned by a partnership, is held by them subject to the ordinary incidents of land held in common." *Smith's Mercantile Law*, 3d Ed., 59 and 60.

VII.—A partnership, the substratum of which is, in whole or in part, real estate, may be formed by parol, and the partnership property, whether real or personal, of the partnership so formed will, for partnership purposes, both during and after the expiration of the partnership, be treated as personalty.

To hold that the partners cannot, whatever be their intention, reduce real estate to capital stock in the first instance without first mingling their money together and saying, "here, this money is now our capital stock," then again "paying it out" in exchange for real estate, so that the "trust with which the fund had been previously charged," could slide off upon the land and "charge" that, is simply absurd.

Is not an original, as strong and efficient as a secondary trust? Has the statute of frauds or the statute of uses and trusts any more application in the former than in the latter case? The authorities cited by the Appellants in their seventh point by no means sustain their position.

VIII.—The form of the deed or conveyance by which the

property is held to the firm, or title taken, whether absolute in terms, or expressing the trust upon its face, whether running to a single partner or to all the co-partners jointly, is immaterial. That the conveyance is absolute in terms defeats no presumption of a trust in the estate conveyed, or of an equitable lien thereon, to the use of the firm. *Crooker vs. Crooker et als.*, 46 *Maine R.*, 250; 1 *Am. Lead. Cas.*, 488, *and cases there cited*; 1 *Story's Eq.*, sec. 774.

IX.—The refutation of the eighth position of the Appellants' counsel disposes of the ninth, the former being the argument by negation, and the latter by affirmation, of the same proposition.

The authorities cited in the ninth point do not sustain the principle contended for.

X.—It being established that the real estate had been in equity converted into partnership assets, it follows, that from the moment of such conversion, "neither partner can have an ultimate and beneficial interest in the capital until the debts are paid and the accounts settled. It follows as a necessary consequence that such partnership real estate cannot be conveyed and alienated by one of the partners alone without a breach of trust; and that such a conveyance would not be valid against the other partner. *Dyer vs. Clark.*

"Without the consent of the other partners the transaction is void and the partnership title is not divested in favor of such separate creditor whether he knew the property belonged to the partnership or not;" 1 *Am. Lead. Cas.*, 3*d Ed.*, 449 *and* 450, and cases there cited. And the complaint not only shows that the Plaintiff did not consent to these conveyances but that they were fraudulently concealed from him by his co-partners who still maintained full fellowship in the firm and control of the property.

There is no question but that a sale or conversion of any part of the capital stock by one partner in satisfaction of his own private debt, is void as to the partnership, and being void such sale or conversion cannot affect the rights of the other partners, unless and not until adopted and confirmed by them. *Sutcliff vs. Dohrman*, 18 *Ohio*, 181.

XIV.—None of the Appellants have the rights of a *bona*

*fide* purchaser for a valuable consideration; and hence their claims are superceded by the equities of prior parties.

The Defendant Arnold, is not only charged with actual notice, but the only consideration for the execution of the mortgage to him was a prior indebtedness, which, though good between the parties, is not sufficient to shut out the equities of prior parties. *Willard's Eq.*, 124; *Coddington vs. Bay*, 20 *J. R.*, 637; 5 *J. Ch. R.*, 54; 21 *Wend.*, 499.

CHATFIELD & BUELL, Counsel for Appellants.

C. S. BRYANT, aad HORACE AUSTIN, Counsel for Respondents.

*By the Court,*—FLANDRAU, J.—This Court has on several occasions been called upon to decide questions involving the rights and interests of partners in the partnership effects, and we have always held that such interest is a share (limited by the articles of partnership) in the surplus remaining of the partnership property, after paying off all the debts of the partnership. *Pease, Chalfant & Co. vs. Rush, Pratt et al.*, 2 *Minn. R.*, 107; *Moss vs. Pettingill*, 3 *Minn. R.*, 216; *Harmon, Aiken & Gale vs. Schalck & Fenske, ante, page* 265. Each partner has a lien upon the partnership property, to the end that he may insist upon its being first applied to the payment of the firm debts; or as it is sometimes expressed, the partnership property is held by the partners subject to a trust for the payment of the firm debts, and neither of the members can divert it into any other channel. This interest of the individual partner in the assets of the firm is assignable, and may be taken in execution.

There is very little difficulty in adjusting the rights of partners, and the creditors of partners, in the partnership property, when once the fund and the liabilities are ascertained, as the law governing these relations is pretty well understood and settled. A much more troublesome question frequently arises as to what is, and what is not, properly partnership property, especially in regard to real estate not designated in the conveyances to the partners, as belonging to the stock of the partnership.

In regard to all lands which are ascertained to be partnership property, the rule in equity is, that they shall be treated as mere personalty, and be governed by the rules and general doctrines applicable to that species of property. *Story on Partn., sec.* 93. " The ground of this doctrine appears to be a special interference of equity in favor of commerce, whereby the trust is separated from the legal estate, and the latter being left to pass according to the nature of real property, the trust estate is made subject to the rules of partnership personal property, so far as concerns the interest of the partners in relation to one another, and those who are in privity with them. 1 *Am. Lead. Ca.*, 336, *note to Coles vs. Coles and Dyer vs. Clark.*

Whether land is to be deemed part of the partnership stock depends upon the agreement of the partners, which agreement may be either express or implied.  After a very careful examination of the authorities, and the statutes of this State concerning trusts and fraudulent conveyances, we are of the opinion that lands may be converted into partnership stock by parol agreement of the partners, or by such facts and circumstances attending its acquisition, or use, as will raise an implication that the partners so intended.  The legal estate will be controlled by the terms of the conveyance, but equity will subject the lands to the same liabilities imposed upon the other partnership estate, and restrict the partners to the same extent in their disposition of them as obtains in regard to the personalty.

The elementary writers do not furnish a very satisfactory solution of the question as to what character of agreement between the partners will work a conversion of lands into partnership stock.  They agree that it may be accomplished by agreement express or implied," and we think it is the necessary result of their views as expressed in their text and the numerous cases cited by them, that the intention of the partners, to be ascertained from their acts or agreements is to govern, and that no express agreement in writing is necessary. See *Collyer on Part.*, *p.* 68 *to* 78; *Story on Part.*, secs. 92–3; 3 *Kent. Com.*, 37, *Title*, "*of stock in land;*" 1 *Maddocks Ch.*, 93–4; *Lomax's Dig. of the Law of Real Property*, *Vol.* 1, *p.*

212–13, *marginal*; *Adams' Doctrine of . Eq.*, 35, *marginal.* This latter author in treating the subject of trusts, adopts the decision in the case of *Dale vs. Hamilton*, 5 *Hare*, 369, 382; 26 *Eng Ch. R.*, 368, and says :

" In accordance with the same principle, it is held that if land is acquired as the substratum of a partnership, or is brought into and used by the partnership for partnership purposes, there will be a trust by operation of law for the partnership as tenants in common, although a trust may not have been declared in writing, and the ownership may not be apparently in all the members of the firm, or if in all, may apparently be in them not as partners but as joint tenants."

In a very recent case in Maine, the whole subject was ably discussed, and it was held that the trust attached to lands owned by the partnership without regard to the character of the deed by which the partners held. *Crooker vs. Crooker, published in the Am. Law Reg. for July*, 1861, *and which will be reported in* 46 *Maine R.*, 250. We make the following extract from the opinion of the Court from *page* 544 *of the Am. Law Register.*

" Each partner is entitled to regard the whole estate as held for his indemnity as against the joint debts, and as security for the ultimate balance which may be due to him for his own share of the partnership effects. *Story on Eq., Vol.* 2, *sec.* 1243, *Hoxie vs. Carr*, 1 *Sumner*, 173; *Buchan vs. Sumner*, 2 *Barb. Ch. R.*, 198-9.

" In relation to real estate when it is part of the partnership effects, it is to be treated in equity to all intents and purposes as a part of the partnership funds ; and whatsoever may be the form of the conveyance, it will be held subject to all the equitable rights and liens of the partners which would apply to it, if it were personal estate; and this rule prevails notwithstanding the legal title may, by the death of the particular party holding it, have been cast by descent upon his heirs at law. 1 *Story's Eq.*, *sec.* 647, *and cases there cited*; *Dyer vs. Clark*, 5 *Metcalf*, 562. Such is the rule, also, notwithstanding the estate may have been conveyed to the partners by such deed as under our *R. S. of* 1841, *ch.* 91, *sec.* 13 and the revision of 1857, *ch.* 73, *sec.* 7, would at law make

them tenants in common. *Burnside vs. Merrick*, 4 *Met.*, 537; *Howard vs. Priest*, 5 *Met.*, 582; *Fall River Whaling Co. et als. vs. Borden*, 10 *Cush.*, 458, *before cited*. Nor does it make any difference that the deed makes no reference upon its face to the grantees as partners. *Tillinghast vs. Champlin et al*, 4 *Ames* (*R. I.,*) 173."

Where the land is purchased with partnership funds, to be used and applied to partnership purposes, and is treated by the partners as part of the partnership stock, it will be treated in equity as held in trust for the partnership until the partnership account is settled and the partnership debts are paid. *Howard vs. Priest*, 5 *Met.*, 582; 1 *Am. L. C.*, 336, *note*.

It is contended that no trust in favor of a partnership can arise under our statute of uses and trusts, when the lands are conveyed to the individual members of the firm as tenants in common, or otherwise than as partners. A careful examination of this statute (*Comp. Stats.*, 382-3-4,) satisfies us that, although the act was designed to, and does do away with some trusts that would otherwise result, it was not the intention of the framers to cut off trusts of this nature. If the statute contains any prohibition of such a trust as we are considering, it must be found in *section* 5, which declares "That every disposition of lands   *   *   *   shall be directly to the person in whom the right of possession and profits shall be intended to be vested," &c. But this section is qualified by the succeeding one, which declares that it shall not extend to trusts arising or resulting by implication of law," &c. And *section* 10 distinctly recognizes "implied or resulting trusts," by providing that such trusts shall not "be alleged or established to defeat or prejudice the title of a purchaser for a valuable consideration, and without notice of such trust." Nor do we think that the recognition and enforcement of such a trust conflicts in any manner with the statute of frauds. *Sec.* 6, *p*. 457, *of the Comp. Stats.* provides as follows :

"No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by deed or conveyance

in writing subscribed," &c. This section expressly excepts such trusts as the one under consideration, resulting by operation of law from the peculiar situation of the lands, and the relation of the grantees or owners. That the powers of the court of equity were not to be limited by this act except where specially provided, appears more clearly from *section* 10, which provides that "nothing in this chapter contained shall be construed to abridge the power of courts of equity to compel the specific performance of agreements in cases of part performance of such agreements," meaning necessarily such agreements as would otherwise fall within its prohibitory clauses.

The remaining question is, whether the Plaintiff shows that the lands in controversy were partnership property. It appears that the Plaintiff and the Defendants, Alfred F. and John L. Howes, on the 22d of June, 1857, formed a partnership under the name of "Howes & Wainwright," the object of which was the establishment of a forwarding, commission, warehousing and storage business. Prior to this date John L. Howes owned one half, or the southerly forty-four feet of the land in dispute. At the formation of the co-partnership, the Plaintiff, at the request of John L. and Alfred F. Howes, purchased the other half or the northerly forty-four feet of said land. It was then agreed between the partners verbally that the eighty-eight feet should be put in, and become part and parcel of the capital stock of the firm, to be used and employed for the sole benefit of the firm, and for carrying out the objects of the co-partnership. The partners then by a series of deeds, vested in each member of the firm one equal undivided third part of the whole eighty-eight feet. Thus, the Plaintiff conveyed to John L. Howes two-thirds of the northerly forty-four feet, and John L. Howes conveyed to the Plaintiff one-third of the southerly forty-four feet, and to Alfred F. Howes two-thirds of the whole eighty-eight feet. The two first deeds were executed on the 22d day of June, 1857, the day on which the co-partnership was formed, and the deed to Alfred F. Howes was executed on the 26th day of the following August. The title therefore so far as was apparent from the conveyances was held by the members of the firm as tenants in common.

In July, 1857, prior to the deed to Alfred F. Howes, the firm commenced the erection of a warehouse on the southerly forty-four feet of the land, for the purpose of carrying into effect the objects of the co-partnership, reserving the northerly forty-four feet for the convenience of the partnership business. The building was completed in the spring of 1859, the Plaintiff paying one-third of the cost, and the other two members each engaging to do the same. Partnership debts to a considerable amount were contracted in the erection of the building. The business of warehousing, forwarding, commission and storage was after the erection of the building actually entered into by the firm, and conducted in the building until the dissolution of the partnership.

It is contended by the counsel for the Defendants that as the object of the partnership was the establishment of the business of forwarding, commission, warehousing and storage, the partnership did not go into effect until the business was actually commenced after the erection of the warehouse. This view we cannot adopt. It is at variance with, and too narrow a construction to be placed upon the acts and agreements of the parties. The nature of the business contemplated by the partnership required that the principal part of the capital stock of the firm should consist of the warehouse, the land upon which it stood and a convenient area about it. No step could be taken towards transacting either branch of the proposed business,—commission, forwarding, warehousing or storage, without a warehouse or store, which must have been either purchased, rented or built. The partners adopted the latter. This step taken, and very little more capital stock was needed to carry on the business save the labor and skill of the several partners. Were the acts alone of the parties, without their agreements, placed before us as our guide, we could hardly resist the conclusion that it was their intention to make a contribution of the land and building to the capital stock of the firm.

We have so far considered the question as between the partners themselves. We will now examine it in its bearings upon third parties. If the conveyances, as in the case at bar, make no reference to the land being partnership stock, but

vest the title in the several members as tenants in common, then the trust which arises between the partners cannot be enforced against a *bona fide* purchaser or mortgagee without notice, (*Comp. Stats.*, 382, *sec.* 10,) but will be enforced against a purchaser or mortgagee from one partner, or his representative, who has notice actual or constructive that the land is partnership property. *Lomax's Dig.*, *Vol:* 1, *p.* 254-5; 1 *Am. Lead. Cas.*, 339, *note to Coles vs. Coles and Dyer vs. Clark*; *Edgar vs. Donolly*, 2 *Munford*, 387; *Hoxie vs. Carr et al.*, 1 *Sumner* 174, 192; *McDermott vs. Lawrence*, 7 *Serg. & Rawle*, 438; *Ford vs. Heron*, 4 *Munford*, 316; *Frink vs. Branch*, 16 *Conn.*, 261, 271; 3 *Kent's Com.*, 39, 40.

In the case at bar, the Defendants Arnold and Samuel R. Howes are charged distinctly with actual knowledge that the lands were partnership property, and the consideration moving from them for their conveyances are assailed in a manner that would take from them the character of *bona fide* purchasers, even if they had not been notified. The consideration for the assignment of the mortgage to George E. Howes is also alleged never to have been paid, nor intended to have been paid, which places him in the same position with the Defendants Arnold and Samuel R. Howes. The Defendant Swift being merely the assignee of an insolvent estate for the benefit of creditors of course takes the land *cum onere*.

The Defendants' counsel pointed out some slight inconsistencies between the allegations in the complaint and the reply, but we regard them as unimportant in the view we have taken of the case except so far as they may reflect upon the credibility of the Plaintiff's pleadings. The allegations of the complaint alone are sufficient to charge the land in the hands of the Defendants with the trust in favor of the partners, therefore the issues of fact joined must be tried.

The order denying the motion for judgment in favor of the Defendants on the pleadings is affirmed.