**Vernon M. BEACH, Respondent,**

v.

**Larry M. ANDERSON, et al.,
Appellants.**

**No. C8–87–1534.**

Court of Appeals of Minnesota.

Jan. 12, 1988.
Review Denied March 23, 1988.

Douglas P. Anderson, Rosenmeier & Anderson, Little Falls, for respondent.

Floyd E. Siefferman, Jr., Richard A. Saliterman, Saliterman & Alden Law Firm, Minneapolis, for appellants.

Heard, considered and decided by PARKER, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

PARKER, Judge.

Larry Anderson and Vernon Beach resolved their partnership dissolution lawsuit by stipulating before a court reporter. Subsequently, Anderson refused to honor the stipulation. Beach brought a motion to compel settlement, and Anderson brought a motion to return the parties to *status quo ante*. The trial court granted the motion to compel settlement. We affirm and remand.

## FACTS

In the spring of 1984, Beach and Anderson entered into an oral partnership agreement to own and operate an amusement center in Brainerd, Minnesota, called Vacationland Park. Together they purchased real estate for the venture and constructed a go-cart track. Shortly after opening in August 1984, the parties disagreed on the management of the center. As a result of the disputes, during 1985 and 1986 they agreed to alternate management of the park. Each would operate the park for two days, pay the expenses incurred for the time he was in control and retain the income during his operation.

After substantial negotiations, the parties failed to agree upon the terms of a written partnership agreement, and Beach filed suit for dissolution of the oral partnership. A trial date certain was set, and on February 19, 1987, the parties met for scheduled depositions with their wives and attorneys present. Over a period of several hours, the attorneys negotiated a settlement which was stipulated before the court reporter.

In pertinent part the agreement held:

(1) Beach would pay Anderson $85,000 for his interest in the partnership and personal property.

(2) Beach paid $5,000 earnest money to Caldis (Anderson's attorney at the time).

(3) Larry and Kim Anderson would not compete for four years in a 20–mile radius and subsequently for two years in a one-mile radius.

Beach canceled the trial date in reliance on the settlement, and closing was set for April 1, 1987. However, on April 1 Anderson fired attorney Caldis, retained new counsel and refused to honor the agreement.

Beach brought a motion to compel Anderson to comply with the stipulation of February 19, 1987. In his affidavit Beach claims he paid the following expenses totaling $68,503.27 and performed these acts in reliance on the stipulation:

(1) $5,000 to Caldis, Anderson's attorney;

(2) $3,972.99 in delinquent real estate taxes;

(3) $344.80 for deed cancellation fees;

(4) $8,545.50 for two new go-carts and parts;

(5) $853.67 for real estate taxes payable in 1987;

(6) $18,665.92 contract-for-deed installment;

(7) $7,078.50 for go-carts and tires;

(8) Arranged 1987 advertising;

(9) Obtained a $90,000 loan to pay the balance owed to Anderson; and

(10) Bought a $12,000 golf course to add to the facility.

Beach was in possession of the park during the entire 1987 operating season. Anderson, fearing that Beach was not keeping an accurate accounting of the revenues, hired George Ecklund to count the number of people whom he observed riding the go-carts on two separate weekends. Based on Ecklund's information, Anderson claimed Beach was misrepresenting the income.

On June 13, 1987, when Beach arrived at the go-cart track, Anderson was already there and had opened the business. According to Beach, Anderson had cut the padlocks, pried open a window to gain access to the go-carts and opened the park without Beach's knowledge. Anderson claims that it was simply his turn to operate the park for the weekend.

A physical altercation occurred and witnesses' affidavits show that Beach punched Anderson and that Marlys Beach hit Kim Anderson, Larry Anderson's wife, with her purse and then kicked her.

Beach moved for an order giving him sole possession of Vacationland Park until the court ruled on his initial motion compelling settlement. Anderson then brought a counter-motion seeking a return to *status quo ante.*

At the motion hearing the trial court refused to return to *status quo ante,* but required Beach to provide a weekly listing of income and expenses. At a subsequent proceeding the trial court granted Beach's motion to compel settlement against both Larry and Kim Anderson. Anderson appeals.

## ISSUES

1. Is the February 1987 stipulation a binding agreement?

2. Is the transfer of partnership real estate within the statute of frauds?

3. Is the covenant not to compete barred by the statute of frauds?

## DISCUSSION

## I

·The threshold issue is whether a settlement agreement was in fact reached. Anderson claims it was simply an agreement to agree. However, that argument is belied by the language of the stipulation itself, which begins with this statement:

The parties have engaged in a series of negotiations throughout the morning with the intent of resolving this litigation by settlement, and have arrived at an *agreement* which is as follows * * *.

(Emphasis added).

The parties then agreed to be "bound" by the stipulation:

Mr. Casey: Mr. Beach, you've now heard me read the entire stipulation into the record? * * *

Mr. Beach: Yes.

Mr. Casey: And do you agree to be bound by that?

Mr. Beach: Yes. * * *

Mr. Caldis: Okay, Mr. Anderson you have heard this agreement read into the record?

Mr. Anderson: Yes. * * *

Mr. Caldis: And are you in agreement with the agreement?

Mr. Anderson: Yes.

Mr. Caldis: Okay, and you intend to be bound by the agreement and fulfill it?

Mr. Anderson: Yes.

Potential tax implications were also addressed:

Mr. Caldis: Okay, one other matter; through the course of our negotiations this morning, we discussed the income tax implications for you on the sale of property, is that correct?

Mr. Anderson: Right.

Mr. Caldis: Okay, so even though we don't know what the exact dollar amount is, you understand that there may be income taxes payable out of this, is that correct?

Mr. Anderson: Yes.

The stipulation was the product of long and careful negotiations, which occurred not only that morning but during previous attempts to end the partnership. The parties had ample opportunity to weigh their interests, including tax ramifications, and they agreed to settle the lawsuit.

 The settlement of a lawsuit is contractual in nature, requiring offer and acceptance for its formation, and it is subject to all of the other rules of interpretation and enforcement. *Theis v. Theis,* 271 Minn. 199, 204, 135 N.W.2d 740, 744 (1965). Settling suits without trial is greatly favored, and such agreements will not lightly

be set aside by Minnesota courts. *Johnson v. St. Paul Insurance Companies*, 305 N.W.2d 571, 573 (Minn.1981).

■ An attorney is authorized by statute to settle his client's case. Minn.Stat. § 481.08. However, the attorney needs his client's authority to do so. *Albert v. Edgewater Beach Building Corp.*, 218 Minn. 20, 24, 15 N.W.2d 460, 463 (1944). Larry and Kim Anderson consented to the stipulation and agreed in their attorney's presence to be bound by its terms. The stipulation authorizes either party's attorney to strike the trial date from the court's calendar.

The stipulation was read to a court reporter, not read in open court as in *State Ex Rel Bassin v. District Court of Hennepin County*, 194 Minn. 32, 33, 259 N.W. 542, 543 (1935). There the petitioner orally consented to a settlement before a judge; the next day he refused to abide by the settlement. The Supreme Court held the settlement to be binding, notwithstanding that the terms were not written. *Id.* Absent fraud or bad faith,

> to allow a good faith settlement arrived at in open court to be set aside * * * [at] the whim of a party, not only would be unjust to the litigants whose reliance on such settlements should be encouraged, but would be a disservice to the dedicated efforts of trial courts to hear and determine the ever-increasing number of cases on jury calendars.

*Eggleston v. Keller Drug Company*, 265 Minn. 78, 82, 120 N.W.2d 305, 307 (1963).

■ Notwithstanding the difference in setting, the principle is the same; this settlement was carefully negotiated and Beach greatly changed his position in reliance thereon. We find the stipulation to be a binding agreement and a valid contract of settlement of the lawsuit.

## II

The transcript reveals that the stipulation is for the sale of an "interest in the partnership which is the subject of this litigation." The partnership assets included equipment, go-carts and real estate. Both counsel conceded at oral argument that the real estate was purchased by the partners in their own names, as tenants in common, and was a partnership asset.

■ Anderson argues that the statute of frauds applies because the stipulation involved the transfer of real estate, but the stipulation clearly transfers the "partnership interest:"

> Plaintiff, Vernon Beach will pay to defendant Larry Anderson, the sum of $85,000 for his *interest in the partnership* which is the subject of this litigation, and that partnership having been previously operated under the name of Vacationland Park. Of that amount, $5,000 earnest money will be paid today in the form of a check payable to the trust account of Caldis & Caldis, Attorneys at Law, to be held by that firm pending the closing of this transaction. The balance of $80,000 will be paid on March 31, 1987. At that time Andersons will deliver to Beaches a quit claim deed and an assignment of contract for deed for the real property involved in the matter, *and other such documentation as may be necessary to transfer the partnership interest which is being conveyed to Beach.*

(Emphasis added).

As a contract for the sale of a partnership interest, Minn.Stat. § 323.25 (1986) applies:

> A partner's interest in the partnership is that partner's share of the profits and surplus, and the same is *personal property.*

(Emphasis added). From this language it is evident that the conveyance of deeds and "other such documentation" connected to real estate transfer is merely ancillary to the partnership transfer. This is not a stipulation for the sale of land within the statute of frauds, as Anderson would characterize it.

■ Real estate owned by a partnership is considered personalty. *In re Dumarest's Estate*, 146 Misc. 442, 262 N.Y.S. 450 (1933). Under Minn.Stat. § 323.25, once a partnership acquires realty with partnership funds and for partnership purposes, it then becomes personalty for all purposes.

In *Arnold v. Wainwright*, 6 Minn. 358 (Gil. 241) (1861), the issue was the disposition of jointly owned real estate. Because the partnership was an oral one, appellant contended the conveyance of real estate must conform with the statute of frauds. The court first determined that a valid partnership existed and then offered this analysis of the real estate involved:

In regard to all lands which are ascertained to be partnership property, the rule in equity is, that they shall be treated as mere personalty, and be governed by the rules and general doctrines applicable to that species of property.

*Id.* at 369 (Gil. at 254).

Addressing the conveyance of such real estate, the court said:

[W]hen it is part of the partnership effects, it is to be treated in equity, to all intents and purposes, as a part of the partnership funds; and whatsoever may be the form of the conveyance, it will be held subject to all the equitable rights and liens of the partners which would apply to it, if it were personal estate * * *.

*Id.* at 370 (Gil. at 255).

Under this analysis the statute of frauds does not apply, because the real estate in issue is personalty "to all intents and purposes." *Id.*

■ Anderson also raises the issue of whether his wife can be required to join him in signing a quit-claim deed. Minn. Stat. § 323.24, subd. 5 (1986), states:

A partner's right in specific partnership property is not subject to dower, curtesy, the statutory interest of a surviving spouse, or allowances to a surviving spouse, heirs or next of kin.

Therefore, it does not appear that Kim Anderson has any individual interest in the property, because she is not personally interested in the partnership. We remand to the trial court for consideration of an appropriate order effectuating the transfer pursuant to the agreement.

## III

■ Anderson also claims that the statute of frauds applies to the agreement's restrictive covenant not to compete, in which both Larry and Kim Anderson agreed that they

will not, either directly or indirectly, be involved in the amusement park business within a 20 mile radius of the present location of Vacationland Park for a period of 4 years * * * and that they further will not become engaged, either directly or indirectly, in the amusement park business within a one mile radius of the present location of Vacationland Park for an additional 2-year period after the initial 4 year period.

A policy disfavoring anti-competitive provisions is found in Minn.Stat. § 325D.51 (1986), which forbids contracts which unreasonably restrain trade. On the other hand, the supreme court has upheld covenants not to compete when "the restriction is no greater than reasonably necessary to protect the employer's business." *Harris v. Bolin*, 310 Minn. 391, 393, 247 N.W.2d 600, 602 (1976).

Anderson has not raised the issue of reasonableness, but instead claims that such an agreement must be in writing and the restrictive covenant is therefore exempted by the statute of frauds. We disagree.

Beach has claimed expenditures of over $68,000 in reliance on the agreement. It is true that "Minnesota courts have never allowed part performance to remove an oral contract from the statute of frauds under [section] 513.01 governing contracts not to be performed within one year." *Kramer v. Bruns*, 396 N.W.2d 627, 630 (Minn.Ct.App.1986). However, that same case speaks to the principle that the statute of frauds "guards against leaving the proof of a contract which is to run beyond a year dependent on the memory and truthfulness of witnesses and the parties." *Id.*

The agreement here was memorialized before a court reporter, not left to the memory of witnesses. Technical requirements regarding memoranda are only aids to discern where the truth lies in a given

case. *Radke v. Brenon*, 271 Minn. 35, 40, 134 N.W.2d 887, 891 (1965). A court will not blindly apply technicalities if they lead to a conclusion repugnant to common sense. *Id.*

Both Larry and Kim Anderson were present during negotiations and when the stipulation was recited. Both acknowledged that they understood its terms and agreed to be bound by them. If a note or memorandum exists as evidence of an oral contract, it will be enforced. *Id.* at 38, 134 N.W.2d at 890. Public policy inhibits perversion of the statute of frauds by those who would deny an oral contract. *Id.*

Anderson requests that the business be returned to *status quo ante* with the management of the property divided between the parties on a two-day cycle. Yet evidence shows these parties have already come to physical blows, after Anderson resorted to self-help, cut padlocks and pried open a window to gain possession of the business premises. Anderson did not trust Beach to provide accurate accountings of profits; yet despite thorough negotiations on the date of agreement, Anderson waited until the very day before the closing to make it known that he did not intend to honor the stipulation.

## DECISION

The parties' stipulation is a valid contract settlement to transfer a partnership interest. A partnership interest is regarded as personal property pursuant to Minn.Stat. § 323.25 (1986), and therefore the real estate transferred by the stipulation is not subject to the statute of frauds. The noncompete covenant is sufficiently memorialized and therefore not barred by the statute of frauds.

Affirmed and remanded.