# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-1742

JAB, Inc., d/b/a Future Concepts Studio & Spa,
Appellant,

vs.

Sara Naegle,
Respondent.

**Filed July 13, 2015**
**Affirmed**
**Connolly, Judge**

Hennepin County District Court
File No. 27-CV-14-5706

Christopher P. Parrington, Christopher C. Grecian, Andrew R. Shedlock, Foley & Mansfield, PLLP, Minneapolis, Minnesota (for appellant)

Mark V. Steffenson, Serena C. Iacono, Henningson & Snoxell, Ltd., Maple Grove, Minnesota (for respondent)

Considered and decided by Chutich, Presiding Judge; Connolly, Judge; and Kirk, Judge.

## S Y L L A B U S

Because Minn. Stat. § 513.01 (2014) provides that a contract that cannot be performed within a year of its making must express consideration in writing either in itself or in a note or memorandum, a nonsolicitation agreement is not enforceable when it does not express such consideration and does include an integration clause.

# OPINION

**CONNOLLY**, Judge

Appellant employer challenges the denial of its request for a temporary injunction in its action against respondent, a former employee, who allegedly breached a nonsolicitation agreement she signed while employed by appellant. The agreement was to last two years after the end of respondent's employment. Because Minn. Stat. § 513.01 (the statute of frauds) provides that, in an agreement that cannot be performed within one year of its making, the consideration must be expressed in writing, and appellant's nonsolicitation agreement did not specify any consideration and did include an integration clause, the nonsolicitation agreement is not enforceable. Because appellant is not likely to succeed on the merits of its action for breach of contract, we affirm the denial of appellant's request for a temporary injunction.

## FACTS

In November 2010, appellant JAB Inc., d/b/a Future Concepts Studio & Spa (JAB), adopted a new computer system that enabled its employees to access their work and appointment schedules remotely when they were not at work and to access JAB's customers' telephone numbers, addresses, visit frequencies, and service and purchase histories when they were at work. According to an affidavit of JAB's owner, the new system was adopted because "both the [employees] and [JAB] recognized that there was value and benefit in permitting the [employees] to be able to access certain customer data."

2

In December 2010, respondent Sara Naegle, who had been employed as a JAB stylist since 2007, had her regular monthly meeting with JAB's owner. At the meeting, respondent was given a document to sign titled "NON-SOLICITATION AND CONFIDENTIAL INFORMATION AGREEMENT" (the agreement), and she did so. Signing the agreement was not presented as optional, and respondent was not told of any benefit that would accrue to her after she signed it.

The agreement provided in relevant part that, during and for 24 months after their employment, JAB employees: (1) would not induce other JAB employees or contractors to leave their employment or terminate their contracts; (2) would not solicit any customer or potential customer of JAB to cease doing business with JAB or to do business with former employees; (3) would disclose the agreement and make it available to any future employer and keep JAB apprised of their post-JAB employment status; and (4) would not disclose any of JAB's confidential information, including customer lists and customer information. The agreement also gave JAB the right to an injunction against any employee who breached it. Finally, the agreement provided that it "contain[ed] the entire understanding between and among the parties and supersede[d] any prior understandings and agreements among them respecting the subject matter of this [a]greement." Neither implicitly nor explicitly did the agreement mention consideration or any benefit to be conferred on employees who signed it.

In March 2014, respondent voluntarily left her employment at JAB and began working at another salon. She contacted some of her JAB customers to let them know

3

where she was working, and JAB contacted respondent's former customers to let them know that another JAB employee would provide services for them.

JAB brought this action against respondent alleging breach of contract and unjust enrichment and obtained a temporary restraining order (TRO). Following a hearing on JAB's motion for a temporary injunction, the district court denied the motion and vacated the TRO.

## ISSUE[1]

Does the statute of frauds preclude enforcement of the agreement?

## ANALYSIS

"Statutory construction is . . . a legal issue reviewed de novo. . . . We construe statutes to effect their essential purpose but will not disregard a statute's clear language to pursue the spirit of the law." *Lee v. Fresenius Medical Care, Inc.*, 741 N.W.2d 117, 122-23 (Minn. 2007) (quotation and citation omitted).

The statue of frauds provides that:

> No action shall be maintained, in either of the following cases, upon any agreement, unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party charged therewith: (1) every agreement that by its terms is not to be performed within one year from the making thereof[.]

---

[1] JAB argues for the first time on appeal that it is entitled to a temporary injunction on the basis of its unjust-enrichment claim, acknowledging that it "did not rely upon the unjust enrichment claim as a basis for the issuance of an injunction" before the district court. Because this court does not consider new arguments raised for the first time on appeal, we do not address this issue. *See Leonard v. Parrish*, 420 N.W.2d 629, 632 (Minn. App. 1988).

4

Minn. Stat. § 513.01. Because the agreement cannot be performed within one year from its making, Minn. Stat. § 513.01 applies. Thus, because the agreement does not express consideration and does include an integration clause stating that it "contain[s] the entire understanding between and among the parties," it cannot be enforced, and, as the district court concluded, JAB's action for breach cannot be maintained.[2]

One reason for the statute-of-frauds requirement that consideration be in writing is to "guard[] against leaving the proof of a contract which is to run beyond a year dependent on the memory and truthfulness of witnesses and the parties." *Beach v. Anderson*, 417 N.W.2d 709, 713 (Minn. App. 1998) (quotation omitted) (concluding that covenant not to compete recorded by court reporter was adequately memorialized), *review denied* (Minn. Mar. 23, 1988). JAB relies on *Beach* for the proposition that "[a] court will not blindly apply technicalities if they lead to a conclusion repugnant to common sense." *Id.* at 714. But it is not "repugnant to common sense" to conclude that Minn. Stat. § 513.01 (clearly prohibiting actions brought on contracts that cannot be performed in one year and do not express consideration) would prohibit an action on a contract that cannot be performed until 24 months after an unspecified future date and does not express consideration. JAB's reliance is misplaced.

---

[2] JAB argues that, because it provided consideration to employees who signed the agreement by giving them access to the new computer system, its failure to express consideration in writing is irrelevant. This argument fails for two reasons. First, JAB offers no legal support for the view that providing consideration satisfies or moots the statute-of-frauds requirement to express consideration in writing. Second, the integration clause precluded the use of anything other than the agreement's actual text in its construction, and the district court properly declined to consider anything outside the four corners of the agreement.

JAB also relies on *Olson v. Ronhovde*, 446 N.W.2d 690, 692 (Minn. App. 1989) (concluding that "the doctrines of equitable estoppel and ratification removed [a] claim from the statute [of frauds]"). But that case is distinguishable: it concerned a three-year lease of farmland to a lessor who, after farming the land and paying rent under the lease for two years, was found to be collaterally estopped from invoking the statute of frauds to invalidate the lease for the third year. *Olson*, 446 N.W.2d at 691, 693. Here, respondent never acted as if the agreement were valid: she notified her customers as soon as she left JAB.

Moreover, in *Olson*, the lessor's ground for revoking was the fact that the landowner's son-in-law, who had signed the lease for the landowner, lacked her written authority to do so. *Id.* But the landowner provided an affidavit ratifying the lease; her "written ratification of the lease effectively removed the lease from the statute of frauds." *Id*. at 693. Here, the issue is not the procedural matter of providing written authorization for an agent's signature; it is the substantive matter of providing consideration, a requirement for any valid contract. *See* Restatement (Second) of Contracts § 17 (1981) (providing that a contract is formed when two or more parties exchange bargained-for promises, manifest mutual assent to the exchange, and support their promises with consideration), *cited in Med. Staff of Avera Marshall Reg'l Med. Ctr. v. Avera Marshall*, 857 N.W.2d 695, 701 (Minn. 2014). Neither the collateral estoppel nor the ratification that precluded application of the statute of frauds in *Olson* exists here.

## **D E C I S I O N**

Because the statute of frauds prohibits an action brought to enforce a contract that cannot be performed within a year of its making when the contract does not express consideration in writing and includes an integration clause, the district court properly concluded that JAB has no likelihood of success on the merits of its action to enforce the agreement and denied the temporary injunction.

**Affirmed.**