FREDERICK H. QUIMBY *et al. vs.* JOHN H. SHEARER *et al.*

Argued Jan. 19, 1894.    Reversed Feb. 17, 1894.

No. 8508.

**Contract construed.**

A certain contract construed.

**Contract signed without reading it, valid.**

When one has executed a contract, the bare fact that he did not read it or know its contents will not relieve him from it.

**Action to cancel a contract.**

When one brings an action to cancel a contract, on the sole ground that the other party has refused to perform it, he must stand on the contract as he executed it.

Appeal by defendants, John H. Shearer and Alvena E. Shearer his wife, from an order of the District Court of St. Louis County, *J. D. Ensign,* J., made September 16, 1893, denying their motion for a new trial.

On June 3, 1892, the plaintiffs, Frederick H. Quimby and Francis Omeis, entered into a contract with defendants to purchase of them the undivided half of the south half of lot sixteen (16) in Transfer Division of Duluth, and were to receive a deed therefor on January 1, 1893; meantime the deed was to be executed by defendants and held in escrow by L. M. Willcutts of Duluth to be delivered on compliance with the terms of the contract.    If meantime defendants should make division with the other joint owner, plaintiffs were to take the north half in lieu of the undivided half.    As consideration therefor plaintiffs agreed to deed to defendants lot 118 in block 23 Duluth Proper Third Division, and pay $6,750 in three equal annual installments to be secured by mortgage on the property purchased, and further agreed as follows:

"And the said parties of the second part in consideration of the premises hereby further agree to pay on January 6, 1893, to the

said parties of the first part and for them, as and for a part of the purchase price of said premises, one half of that certain mortgage of $6,500 now covering said south half of said lot sixteen (16) and interest thereon from March 8, 1892."

Time was made the essence of the agreement and defendants agreed as follows: "The parties of the first part in consideration thereof, hereby sell and agree to convey unto the said parties of the second part or their assigns by deed of warranty, upon the prompt and full performance by said parties of the second part of their part of this agreement, the said undivided half of the south half of lot sixteen (16.)"

Plaintiffs deeded the lot No. 118, and the defendants soon after executed their deed and left it with Willcutts and plaintiffs executed their notes and mortgage and left them with him also. The deed so left contained a covenant against all incumbrances except the mortgage for $6,500. On Saturday, December 31, 1892, plaintiffs tendered to the defendants $3,463.50 (half of the mortgage and interest) and demanded that the mortgage be cancelled at once and satisfied of record, claiming the contract required defendants to cause this to be done on that day although the mortgage was not due until March 8, 1893. Plaintiffs also then and there demanded a deed of the undivided half of the south half of the lot sixteen free of incumbrance, as no division with the other joint owner had been made meantime. Defendants offered to deed subject to the mortgage and leave with plaintiffs the money tendered, but they declined to receive such deed. They never saw the deed that defendants left with Willcutts until that day.

Plaintiffs thereupon commenced this action to cancel the contract for non-performance by defendants and to recover the lot No. 118 and to obtain such other and further relief as the court should hold to be equitable. Defendants answered; and the issues were tried March 9, 1893. The Judge made findings and ordered judgment for plaintiffs as prayed. Defendants moved for a new trial. Being denied they appeal.

*Jaques & Hudson,* and *Billson, Congdon & Dickinson,* for appellants.

The court found that the deed offered by defendants on December 31, 1892, was not in accordance with the provisions of the con-

tract, for the reason that by the terms of the deed the grantees were made to assume the payment of one half of the mortgage instead of being permitted to pay the amount of it then to the defendant Shearer. We claim that the parties must be deemed to have intended that the purchasers of this lot, the plaintiffs, were to assume the payment of a half of the mortgage and not the bare obligation to pay the amount of it to the vendor, Shearer. The contract and deed left with Willcutts were parts of but one transaction and contract, and must be read and construed together. It is evident that this deed was executed, accepted and placed in escrow as a part of the transaction. The contract by its terms thus unites the deed with itself, and virtually declares the deed to be *the* deed which was to be delivered in performance of the terms of the contract. This deed was agreed upon as a performance, or as the mode of performing the agreement to convey. *Slocum* v. *Bracy,* 55 Minn. 249; *Brackett* v. *Edgerton,* 14 Minn. 174; *Chute* v. *Washburn,* 44 Minn. 312; *Stacy* v. *Pandall,* 17 Ill. 407; *King* v. *King,* 7 Mass. 495.

If plaintiffs did not read the deed that does not affect the result. They were thereafter precluded from claiming that the deed was not in accordance with the contract. They cannot now assert that the very deed, which their contract declared should be delivered for the purpose of carrying it into effect, was not such a deed as they expected to receive.

*Walter Ayers,* for respondents.

Where one person contracts with another to sell and convey real estate by a warranty deed the vendee is entitled to a clear title, free of defects and incumbrances. *Murphin* v. *Scovell,* 41 Minn. 262; *Drake* v. *Barton,* 18 Minn. 462.

The language of the contract obviously means that Quimby and Omeis should be ready on January 1, 1893, with the money to pay half the mortgage. It might be paid to the defendants directly or for them, but simultaneously with the payment Quimby and Omeis were entitled to a cancellation of the mortgage and to the delivery of a full covenant warranty deed of the land free from incumbrance.

The deed left with Willcutts contains a clause which is directly contrary to the terms of the contract. It is repugnant to it. It

is in alleged pursuance of the contract. It is in fact not so. It is an entirely different contract. The contract was carefully drawn. It confessedly embodied the agreement of the parties, made only after a long period of negotiation. All papers drawn were supposedly in pursuance of its terms, but this deed evidences an entirely new or different contract. Is there anything to show that the parties made a new contract? The testimony of all the witnesses shows that neither party had any such intention. The recital that the papers were to be left in escrow does not amount to this. It simply shows how the contract was to be carried out.

GILFILLAN, C. J. Action to cancel a contract by which defendants agreed to convey to plaintiffs certain real estate, being the undivided half of the south half of a lot in Duluth. The only ground on which cancellation is sought is that defendants had failed and refused to perform; and the only question on the appeal is whether the facts found show such failure.

The particulars in which failure is claimed are : *First,* in failing to pay off and procure discharged a certain mortgage resting on the property; and, *Second,* in failing to execute or tender such a deed as plaintiffs were, under the contract, entitled to. The plaintiffs, as part of the purchase price, conveyed to defendants, at the time of making the contract, a certain lot. They were to pay to or for defendants the half of the mortgage referred to, and defendants were to convey the undivided half to plaintiffs on the 1st day of January, 1893. The mortgage referred to did not become payable till two months after that date. Of course, defendants might bind themselves with plaintiffs to pay off the mortgage before it became due, as a condition precedent to or concurrent with the consummation of the contract to convey; but, as payment of the mortgage before due could be made only with the consent of a third person, we would expect the intention to require it to be indicated, if not directly expressed, in the contract to convey. But there is not a word in it on the subject of paying off the mortgage, other than that plaintiffs were to pay half of it to or for defendants. On the contrary, there is a clause in the contract that clearly contemplates the existence of the mortgage as a lien on and after January 1, 1893. It is this: "It is also mutually agreed that if at any time

prior to the 1st day of January, 1893, the said parties of the first part [the defendants] shall agree with the other joint owner or owners of the south half of said lot sixteen, Transfer division, to a division thereof, and obtain in lieu of said undivided half of said south half of said lot sixteen the title to the whole of the north half of said south half of said lot sixteen, free from incumbrances, except said *sixty-five hundred dollar mortgage* [that in question] and any assessments hereafter levied thereon, then the said deed of conveyance shall be for said north half of the south half of said lot sixteen." And the deed, which will be hereafter referred to, excepts the mortgage from the covenants against incumbrances. We cannot construe the contract as requiring defendants to procure a discharge of the mortgage.

In respect to the character of deed the plaintiffs were entitled to demand, the contract in one particular,—viz. in reference to a covenant against incumbrances which should cover the mortgage above mentioned,—when read apart from the deed agreed upon by it, does not expressly require such a covenant. We may assume, however, that so read it would be construed to require a covenant against the mortgage. There was in the contract this clause: "The said deed and mortgage of said part of lot sixteen and notes [notes and a mortgage to be executed by plaintiffs to secure part of the purchase price] are held in escrow by L. M. Willcutts, of Duluth, to be delivered to the respective parties upon compliance with the terms of the foregoing contract." That deed excepted the mortgage from the covenant against incumbrances. Now, had the contract, read apart from the deed, required in plain and unmistakable terms a covenant against the mortgage, we are not prepared to say the deed would have prevailed. But the intent to require such a covenant must be arrived at by construction, and is not expressed in terms; and the parties have, by the clause just quoted and the deed it refers to, adopted a construction,—have agreed what they meant by the other parts of the contract. Or if we make the construction upon the general rule that instruments between the same parties, executed at the same time, in reference to the same subject and transaction, and for the same general purpose, are to be construed together as parts of one contract, then, as the definite and precise must prevail over the indefinite, the

particular· over the general, and the expressed over what might otherwise be implied, the same result must be reached, to wit, that a covenant against the mortgage was not intended.

The facts in regard to the deed, as found by the court below, were that the parties arrived at an oral agreement as to the transaction, and the defendant John H. undertook to have the papers prepared, and he procured to be drawn the contract in duplicate, the deed from defendants to plaintiffs, the deed of the other lot to defendants, and the notes and mortgage to be executed by plaintiffs to secure part of the purchase money; and thereupon the plaintiffs and John H. met to sign the papers which the latter had procured to be drawn, and they were all placed before plaintiffs for their consideration. The contract in duplicate and the notes and mortgage for part of the purchase money were then executed by the plaintiffs. The defendant John H. executed the deed and the contract in duplicate, and it was agreed they should be sent to Milwaukee, to procure their execution by the defendant Alvena, and they should then be deposited with Willcutts; and that was done, one of the duplicates, however, being delivered to plaintiffs. The deed to defendants was to be sent to New York, to procure its execution by the wife of the plaintiff Quimby, and, when executed, it should be delivered to defendants, and that was done. There is no question that the deed left with Willcutts, and produced at the trial, was the same as that placed before plaintiffs when the parties met to execute the papers, and as is referred to in the contract. And it also found the respective parties well knew of the $6,500 mortgage.

The court also found that neither of the plaintiffs ever read or knew the contents of that deed. That fact is immaterial in this case. When a man executes a contract, the bare fact that he did not read it or know its contents will not relieve him from it. If it would, written contracts would be on a very insecure footing. In some cases of mistake through which the written contract is not what was intended, a party may bring an action to reform it; but in such case the court would have to allow the other party an opportunity to comply with it as reformed. It could not reform the contract, and at once cancel, on the ground that the other party

has not done what the contract, as reformed, requires of him. If a party is induced, by the fraud or misrepresentation of the other party, to execute, without reading, a contract materially different from what he had a right to believe he was executing, he may have an action to rescind on the ground of fraud; but, if he bring an action to rescind or cancel on the sole ground that the other party has failed to perform, he must stand on the contract as he executed it. Such is this case.

Order reversed.

(Opinion published 58 N. W. Rep. 155.)