JOHN J. GREER AND OTHERS v.
JOAN KOOIKER AND OTHERS.
HARRY LAIBLE AND ANOTHER,
THIRD-PARTY DEFENDANTS.

253 N. W. 2d 133.

April 8, 1977—No. 46422.

*Benjamin Vander Kooi,* for appellant Cyril M. Koob.

*Taylor & Malone* and *William C. Taylor,* for appellant Olivia M. Koob.

*Brecht, Hedeen & Hughes* and *William T. Hedeen,* for respondent plaintiffs.

*Erickson, Zierke, Kuderer & McKenna* and *Elton A. Kuderer,* for respondent Laible.

*Gislason, Dosland, Hunter & Malecki* and *Daniel A. Gislason,* for respondent Dowden.

Heard before Kelly, Yetka, and Scott, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

In this action plaintiffs sought specific performance or, in the alternative, damages for breach of a contract to sell a farm. The trial court found defendants entered into a written contract for the sale of the farm to plaintiffs and subsequently conveyed the same land to a third party. The court awarded damages of $37,500 to plaintiff buyers, damages of $4,725 to the real estate agent for a breach of a listing contract, and $5,000 to the sub-

sequent buyer as damages for defending her title. We affirm in part, and reverse on the issue of damages awarded to plaintiffs.

These issues are presented by the appeal:

(1) Whether the memorandum executed between the parties on July 19, 1973, satisfied the statute of frauds, Minn. St. 513.05.

(2) Whether the trial court's findings that a contract for the sale of land existed between the parties on July 19, 1973, and that the defendants breached that contract by conveying the same land to a bona fide purchaser were clearly erroneous.

(3) Whether the trial court erred in computing the date of the breach of the contract for purposes of assessing damages.

(4) Whether the real estate agent was entitled to a commission.

(5) Whether the real estate agents were negligent in their conduct of the negotiations.

Defendants Cyril Koob and his wife, Olivia, owned a 482.08-acre farm in Murray County, Minnesota. Mr. Koob was himself a licensed real estate salesman, and had experience selling real estate and drafting contracts for deed.

On August 24, 1970, Mr. Koob listed the farm with Harry Laible, a real estate agent in Slayton, Minnesota. The parties signed an exclusive listing agreement to last initially for 12 months, but to be renewed automatically thereafter. The contract listed the legal description of the farm, set a minimum price of $137,500, and provided for a commission of 3 percent of the price obtained. Mrs. Koob did not sign the contract.

In April 1970, Mr. and Mrs. Koob had executed a quitclaim deed to the farm to Mr. Koob's brother, along with a mortgage, to secure a $25,000 loan. The deed was filed of record in March 1971. The brother then placed a quitclaim deed to the farm, issued to Mrs. Koob, in escrow, to be delivered upon payment of the outstanding debt by Mr. and Mrs. Koob.

In July 1973, Mr. Koob's real estate agent began serious negotiations for the sale of the farm with the plaintiffs, John Greer, R. D. Bertell, and Wyman Steffen, who were from Iowa.

Accompanied by an Iowa real estate broker, Fred Dowden, the plaintiffs, two of whom were practicing attorneys, met Mr. Koob and Mr. Laible at the Koob's farm on July 19, 1973. The parties viewed the farm and then negotiated for about an hour concerning the sale of the farm. During the conversation, one of the plaintiffs, John Greer, a practicing Iowa attorney, prepared a memorandum, which was then signed in the margin by the plaintiffs and Mr. Koob. The sale price was $157,500, which did not include the standing crop.

After the memorandum was signed, Mr. Koob took the document to his wife in the house and said, "[t]hat this is the start of selling the farm," and told her to sign it, which she did.

A few minutes later Mr. Koob returned to the farmyard with the document, and shook hands with the plaintiffs. Mr. Laible took a $5,000 check as down payment and placed it in his trust account. Mr. Dowden, plaintiffs' real estate broker, then took the signed memorandum with him to have a contract for deed prepared. The contract for deed was prepared by a Minnesota attorney, executed by plaintiffs, and presented to Mr. Koob, who refused to sign it. He stated three objections. First, he wanted the advance interest payment by the purchasers to be mandatory rather than optional. Second, he expressed concern about paying off the debt he owed to his brother. Finally, he complained about the rate of commission for the real estate broker.

Laible notified Dowden of Koob's objections. In response, Dowden offered to cosign a note to help pay off the debt Koob owed, and obtained a commitment from the buyers to prepay the first year's interest. Koob still refused to sign the formal contract for deed, however.

On September 6, 1973, the Koobs sold the farm to another party, Joan Kooiker, for $192,500. The purchase price included 275 acres of standing crops, valued at $37,500, and various equipment.

When they discovered the land had been sold, the Iowa purchasers brought this action against Mr. and Mrs. Koob and Joan

Kooiker seeking specific performance of their alleged contract for sale or, in the alternative, damages for breach of contract. Defendant Joan Kooiker counterclaimed against plaintiffs for confirmation of her contract for sale, and cross-claimed against the Koobs for the cost of defending against plaintiffs' claims. The Koobs then brought third-party actions against Harry Laible and Fred Dowden for negligence or breach of duty in conducting the sale, and also amended their answer to assert the defense of the statute of frauds. Finally, Harry Laible, as third-party defendant, counterclaimed against the Koobs for his commission pursuant to the real estate listing agreement.

The case was tried to the court without a jury, and the court found against the Koobs on all claims. It confirmed the sale of the farm to Joan Kooiker and awarded her damages of $5,000; it awarded plaintiffs $37,500 against the Koobs for breach of contract; and it awarded Harry Laible $4,725 as his commission from Mr. Koob on the sale. The defendants moved for an order granting judgment "notwithstanding the findings of fact, conclusions of law, and order for judgment, and in the alternative a new trial." The motion was denied and defendants properly appeal from that part of the order denying a new trial.

A. *The Contract for Sale*

Appellants both attack the validity of the trial court's finding that a contract of sale existed between themselves and the plaintiffs on four grounds. First, they contend the memorandum failed to satisfy the statute of frauds. Second, they argue the parties intended the formal contract for deed and not the memorandum to constitute the contract. Third, they argue the contract, if any, between Kr. Koob and the plaintiffs was void because it was not joined in by Mrs. Koob and thus constitutes an attempt to convey the homestead without the consent of the spouse in contravention of Minn. St. 507.02.[1] Finally, they argue

---

[1] Minn. St. 507.02, provides: "If the owner be married, no mortgage of the homestead, except for purchase money unpaid thereon, nor any sale or other alienation thereof shall be valid without the signatures of

the trial court erred in admitting the July 19 contract because of failure to pay the mortgage registration tax. Each will be treated in turn.

■ *The Statute of Frauds*

Minn. St. 513.05 of the statute of frauds provides:

"Every contract for the leasing for a longer period than one year or for the sale of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party by whom the lease or sale is to be made, or by his lawful agent thereunto authorized in writing; and no such contract, when made by an agent, shall be entitled to record unless the authority of such agent be also recorded."

The statute expressly requires the memorandum to state the consideration and to be subscribed by the vendor. In addition to these two statutory requirements, this court has required the contracting parties to be identified with reasonable certainty, the land to be sufficiently described, and the general terms and conditions of the transaction to be specified. Radke v. Brenon, 271 Minn. 35, 38, 134 N. W. 2d 887, 890 (1965); Doyle v. Wohlrabe, 243 Minn. 107, 66 N. W. 2d 757 (1954); Scott v. Marquette National Bank, 173 Minn. 225, 217 N. W. 136 (1927);

both husband and wife.

"A husband and wife, by their joint deed, may convey the real estate of either. The husband, by his separate deed, may convey any real estate owned by him, except the homestead, subject to the rights of his wife therein; and the wife, by her separate deed, may convey any real estate owned by her, except the homestead, subject to the rights of her husband therein; and either husband or wife may, by separate conveyance, relinquish his or her rights in the real estate so conveyed by the other. Subject to the foregoing provisions, either husband or wife may separately appoint an attorney to sell or convey any real estate owned by such husband or wife, or join in any conveyance made by or for the other. A minor husband or wife has legal capacity to join in a conveyance of real estate owned by his or her spouse, so long as the minor husband or wife is not incapacitated because of some reason other than his or her minor age."

Swallow v. Strong, 83 Minn. 87, 85 N. W. 942 (1901). Thus, five elements must be present in the memorandum: (1) A statement of the consideration; (2) an adequate description of the parties; (3) an adequate description of the land; (4) the general terms and conditions of the transaction; and (5) subscription by the vendor. If these elements are present the contract is not void[2] for failure to comply with the statute. In addition, two rules of construction should be noted. First, parol evidence is admissible to explain (but not to contradict or to supply) a term of the memorandum; judicial notice may also be used. Second, the basic end of the statute must be furthered. This court stated in Doyle v. Wohlrabe, 243 Minn. 107, 110, 66 N. W. 2d 757, 761 (1954):

"* * * When we recall the historical fact that the statute of frauds was originally enacted simply to prevent the frauds to which transfers of land by parol and livery of seizin lent themselves, we will readily recognize that its basic purpose is only to provide reasonable safeguards to insure honest dealing and that it was not enacted to make a fetish of literal statutory compliance or a fetish of requiring a perfect written contract. That adherence to the strict letter of the statute or perfection in the drafting of the written conveyance are not ends in themselves is illustrated by the equitable doctrine that the statute may not be used as an instrument of fraud and that part performance may, in some instances, place the transaction wholly outside the statute."[3]

When considered in light of these constructions, the present memorandum is sufficient. Three of the five elements are satisfied on the face of the memorandum. The description of the par-

---

[2] "Void" within the meaning of the statute of frauds has been interpreted as void*able*. Royal Realty Co. v. Levin, 244 Minn. 288, 69 N. W. 2d 667 (1955); Borchardt v. Kulick, 234 Minn. 308, 319, 48 N. W. 2d 318, 325 (1951).

[3] See, also, Radke v. Brenon, 271 Minn. 35, 40, 134 N. W. 2d 887, 891 (1965).

ties, the general terms and conditions of the sale, and the subscription[4] of the vendors are clearly present. Only the remaining two elements, description of the land and the statement of the consideration, must rely on parol evidence and judicial notice to complete their meaning.

The test for adequate description of land is stated in Miracle Construction Co. v. Miller, 251 Minn. 320, 323, 87 N. W. 2d 665, 669 (1958):

"The description of land which a written sales contract purports to convey satisfies the statute of frauds (§ 513.05) if, *in the light of the circumstances and conditions surrounding the parties with respect to the land during the negotiations* (as established by parol evidence or by a permissible taking of judicial notice), *such description provides, when applied to the physical features of the surrounding terrain, a reasonably certain guide or means for identifying such land to the exclusion of all other lands.* Since even the most specific and precise description may require some parol proof to complete the identification of the property, the test is—does the writing furnish a reasonably certain means of identification? Clearly, a description of land may be adequate to statisfy the statute of frauds even though it is not so certain as to render unnecessary the resort to extrinsic evidence to apply it to the land. If, with the aid of extrinsic evidence, the description can be applied to the property so as to identify and distinguish the intended area from all other lands, it is adequate. Although parol evidence is inad-

---

[4] In Conlan v. Grace, 36 Minn. 276, 281, 30 N. W. 880, 883 (1886), this court defined the test of adequate "subscription" as whether the offeror intended to authenticate the document: "* * * If signed by the grantee's authority, or adopted by him as his signature, although written by another, it is a sufficient signing by the grantor." Accord, Radke v. Brenon, 271 Minn. 35, 39, 134 N. W. 2d 887, 891 (1965) ("* * * A 'subscription' is the same as a 'signing,' * * *.") See, also, 2 Corbin, Contracts, § 521; 4 Williston, Contracts (3 ed.) § 585; Restatement, Contracts, § 210; Annotation, 171 A. L. R. 334; 34 Minn. L. Rev. 277; 16 Minn. L. Rev. 325.

missible to aid a defective description by supplying an essential part which is missing, it is admissible to interpret or translate the description's word symbols as the parties must have used and understood them in the light of circumstances and conditions which surrounded their negotiations."

At trial all the parties agreed the subject of the sale was the Koob farm. The parties viewed the land prior to the negotiations and signed the document in the Koob farmyard. There was no doubt between the parties as to the meaning of the "482.08" entry on the document. Similarly, they agreed at trial that the $157,500 figure represented the consideration. Thus, parol evidence dispels any ambiguities in the document itself. The statute of frauds is satisfied.

■ *Intent to Contract*

The trial court found that the Koobs entered into a contract for the sale of the farm. Unless this finding is clearly erroneous, it must be upheld. Rules of Civil Procedure, Rule 52.01. That is, the court reviewing the evidence must be left with the definite and firm conviction that a mistake has been committed, notwithstanding evidence to support such a finding. In re Estate of Balafas, 293 Minn. 94, 96, 198 N. W. 2d 260, 261 (1972); In re Trust Known as Great Northern Iron Ore Properties, 308 Minn. 221, 243 N. W. 2d 302 (1976); Bengtson v. Village of Marine on St. Croix, 310 Minn. 508, 246 N. W. 2d 582 (1976).

It is a basic principle of contract law that parties may assent to a contract one of the terms of which is that a later, more formal evidence of it may be executed. See, e. g., Lamoreaux v. Weisman, 136 Minn. 207, 161 N. W. 504 (1917); Restatement, Contracts, § 26. It is a question of intent. The evidence leaves little doubt the parties intended the memorial to be binding. Both the plaintiffs and Mr. Koob were experienced in real estate dealing. The signing of the document is of special significance. Even a person with limited experience in such matters would attach special meaning to the signatures of the parties.

Thus, the finding of a contract by the trial court is not clearly erroneous.

■ *Signing of Contract by Mrs. Koob*

The plaintiffs and Mr. Koob negotiated the terms of the memorandum in the yard of the Koob farm. After each signed the memorandum, Mr. Koob took the document into the house and told Mrs. Koob to sign it, which she did. She did not read the document. Mrs. Koob argues that she, by this act, did not join in the contract. She contends that her failure to read the contents of the document (and, it must be assumed, her failure to ask her husband to explain or to read the contents of it to her) voided her consent.

In the absence of fraud,[5] mistake, or unconscionable terms,[6] however, a party to a contract on which others have relied cannot avoid the duties of the document by showing he did not know its contents. E. g., Shaughnessy v. New York Life Ins. Co. 163 Minn. 134, 203 N. W. 600 (1925) ; Quimby v. Shearer, 56 Minn. 534, 58 N. W. 155 (1894) ; 4 Dunnell, Dig. (3 ed.) § 1735; 1 Corbin, Contracts, § 107; 1 Williston, Contracts (3 ed.) § 35. Illiteracy, as such, even if present, is not a defense. Chicago, St. P., M. & O. Ry. Co. v. Belliwith, 83 F. 437 (8 Cir. 1897) ; 1 Williston, Contracts (3 ed.) § 35, p. 97 and note 19; cf., e. g., Fay v. Buckeye Pipe Line Co. 30 Ohio App. 316, 164 N. E. 782 (1928) (eyesight impairment) ; Paulink v. American Express Co. 265 Mass. 182, 163 N. E. 740 (1928) (did not understand English).

No claim is made of fraud or mistake. The only defense is failure to read the document. If unaware of its contents or unable to decipher its meaning, Mrs. Koob had ample opportunity

---

[5] See, e. g., Marino v. Northern Pacific Railway Company, 199 Minn. 369, 272 N. W. 267 (1937).

[6] See, e. g., Henningsen v. Bloomfield Motors, Inc. 32 N. J. 358, 385, 161 A. 2d 69, 84 (1960); cf. Minn. St. 336.2—302. See, also, Kessler, *Contracts of Adhesion—Some Thoughts About Freedom of Contract*, 43 Col. L. Rev. 629.

to ask an explanation of her husband or of the purchasers. She chose not to.

■ *Mortgage Tax*

At trial the Koobs objected to the introduction of the memorandum of July 19, 1973, on the grounds that the document was inadmissible as evidence because the plaintiffs had not paid the mortgage registration tax pursuant to Minn. St. 287.10, which provides:

"No such mortgage, no papers relating to its foreclosure nor any assignment or satisfaction thereof, shall be recorded or registered unless the tax shall have been paid; *nor shall any such document, or any record thereof, be received in evidence in any court*, or have any validity as notice or otherwise; but, if the tax be paid, no error in computation or ascertainment of the amount thereof shall affect the validity of such mortgage or the record or foreclosure thereof." (Italics supplied.)

For the purposes of the payment of the tax, contracts for deed which give or entitle the vendee to take possession are deemed to be a mortgage to the extent of the unpaid purchase price.[7]

The plaintiffs offered to pay the tax at trial when the objection was raised, but the trial court held that payment was unnecessary. We believe the trial court was correct on the theory that the July 19 contract is not a contract for deed, but only a contract to enter into a contract for deed. The purpose of the statute is to collect revenue prior to the use of the document for recording purposes or foreclosure. If the Koobs had not breached the agreement of July 19, a formal contract for deed would have been executed and the tax could have been paid. The only reason it was not was because of the actions of the defendants. The trial court only determined a contract existed. Until that determina-

---

[7] Minn. St. § 287.02 provides: "An executory contract for the sale of land, under which the vendee is entitled to or does take possession thereof, shall be deemed, for the purposes of sections 287.01 to 287.12, a mortgage of the land for the unpaid balance of the purchase price."

tion was made (or admitted by the (defendants) no tax would be due.

B.  *Listing Contract*

The trial court found that a written listing agreement existed between Cyril Koob and Harry Laible which provided for a 3-percent commission, and awarded Laible $4,725 damages. On appeal Cyril Koob argues the listing agreement was void because the title to the land was subsequently conveyed to his brother as security for a debt. This argument is without merit.

A broker is entitled to his commission when he has performed all that he undertook to perform. See, e. g., Goss v. Broom, 31 Minn. 484, 18 N. W. 290 (1884). The relationship is one of contract. See, Olson v. Penkert, 252 Minn. 334, 90 N. W. 2d 193 (1958). To maintain a claim for his commission, a broker must show that he has procured a purchaser at the stipulated price and in accordance with the employment terms or that the principal has deprived him of the opportunity to do so without cause.

The following rule was given by this court in Olson v. Penkert, 252 Minn. 334, 344, 90 N. W. 2d 193, 201 (1958):

"The great weight of authority is that, unless the broker and his employer have expressly stipulated to the contrary, the broker is entitled to his compensation upon the completion of the negotiations which he undertook, irrespective of whether or not the contract negotiated is actually consummated or whether the failure to complete the contract is due to the default or refusal of the employer or to that of the party procured by the broker, so long as the failure to carry it through is not due to any fault of the broker or so long as he has not been guilty of fraud or bad faith." (Italics omitted.)

Koob contracted with Laible to supply a willing purchaser. The contract did not require, as some do, a sale to be completed before a commission is earned. See, e. g., Huntley v. Smith, 153 Minn. 297, 190 N. W. 341 (1922). Laible was the efficient cause of bringing together the Koobs and the prospective purchasers on terms mutually agreeable to each. The agreement was memo-

rialized in a signed writing. This is what Laible bound himself to perform and this is what he accomplished. The sole reason the sale was not consummated was the actions of the Koobs. This is not a defense. As this court noted in Olson v. Penkert, 252 Minn. 334, 343, 90 N. W. 2d 193, 200 (1958):

"We think the rule well established that, if the efforts of the broker are rendered a failure by the fault of the employer, the broker does not lose his commission. *This rule is based upon the familiar principle that no one can avail himself of the nonperformance of a condition precedent who has himself occasioned its nonperformance.*"

Similarly, the lack of full title to the land contracted to be conveyed is not a defense to Mr. Koob. A principal who contracts with a broker to secure the sale of property he does not own takes the risk of incurring an obligation to pay a commission if the title cannot be perfected. It is not the duty of the broker to determine ownership unless he agrees expressly to do so. Mayberry v. Davis, 288 Minn. 73, 178 N. W. 2d 911 (1970). The rationale is simply that the principal is in a superior position to cure any imperfections. The rule applies even if the broker is aware of the defective title. *Id.* Moreover, even assuming arguendo Mrs. Koob had not signed or had refused to sign the contract for sale, the result would be the same. It would be no defense to a suit for commission that the eventual sale was frustrated because of the failure or refusal of the principal's spouse to join in the contract of sale, Hamlin v. Schulte, 34 Minn. 534, 27 N. W. 301 (1886); see, generally, Annotation, 10 A. L. R. 3d 665. The result is the same even if the property is the homestead, Mackenzie v. Staudenmayer, 175 Wis. 373, 185 N. W. 286 (1921).

As a second defense, Cyril Koob contends for the first time on appeal that the listing contract was unenforceable because it contained a provision for automatic extension in contravention of the rules promulgated by the Minnesota Commissioner of Securities for the regulation of real estate brokers pursuant to Minn. St. 82.27. This issue is subject to the well-settled rule that

an unlitigated issue may not be asserted for the first time on appeal. E. g., American Surety Co. of New York v. Greenwald, 223 Minn. 37, 25 N. W. 2d 681 (1946).

C.  *Damages*

In assessing damages the trial court set March 1, 1974, as the date of breach of the July 19, 1973, contract because it marked the date the plaintiffs were entitled to full possession of the land.[8] Cyril Koob contends, however, that the date of the breach was September 6, 1973, when the farm was sold to Kooiker.

The doctrine of anticipatory breach applies to contracts to convey land. See, e. g., Matteson v. United States & Canada Land Co. 103 Minn. 407, 115 N. W. 195 (1908); Annotation, 102 A. L. R. 1082; 77 Am. Jur. 2d, Vendor and Purchaser, § 518. This court set forth the remedies available in the case of an anticipatory breach in Engel v. Mahlen, 153 Minn. 1, 4, 189 N. W. 422, 423 (1922):

"* * * It is well settled that where one party repudiates the contract, the other party has an election to pursue one of three remedies: (1) to treat the contract as rescinded and avail himself of the remedies which may be based on a rescission; (2) to treat the contract as still binding and wait until the time arrives for its performance and then sue and recover under the contract; (3) to treat the renunciation as an immediate breach and sue at once for any damages which he may have sustained."

The court determined the plaintiffs chose the second option (waiting until the time of performance) and assessed damages as of March 1, 1974.

However, the plaintiffs instituted the action on December 19, 1973, after the Koobs repudiated the contract and sold the farm to Kooiker on September 6, 1973. It appears the date on which

---

[8] The memorandum states "Possession—Today," but the court concluded the testimony of the parties indicated the March 1, 1974, date to be the time of full beneficial possession and the immediate possession provision referred only to preparing the land for the 1974 planting season, as was the custom in farm sales.

the plaintiffs treated the Koobs' actions as a breach was September 6, 1973, rather than March 1, 1974. Thus, the trial court erred in setting the date of the breach. The measure of damages for breach by the vendor of a contract to convey land is the difference between the market value and the purchase price at the time of the breach, September 6, 1973. Scheerschmidt v. Smith, 74 Minn. 224, 77 N. W. 34 (1898). That is, the vendee is entitled to the "loss of the bargain."

D. *Negligence of Real Estate Brokers*

Finally, Cyril Koob argues that the real estate agents were negligent as a matter of law. This does not merit extended discussion. The trial court found the reason for the failure to consummate the contract was the actions of the Koobs. Unless it can be said this finding is clearly erroneous, the dismissal of the actions against Laible and Dowden by the trial court must be affirmed. See, Rule 52.01, Rules of Civil Procedure.

There must be a remand to the trial court on the question of damages due plaintiffs. The court must find the difference between the market value of the land at the date of the breach by defendants, namely, September 6, 1973, and the purchase price they had agreed to pay. While the amount paid by the second buyer (Kooiker) is properly admissible evidence of the market value, it is not conclusive evidence, and the trial court may take additional evidence and testimony as to true market value.

The trial court is affirmed as to the awarding of damages in the amount of $4,725 for third-party defendant Laible, and $5,000 for defendant Joan Kooiker, but the case is reversed and remanded on the issue of damages to be awarded plaintiffs.

Affirmed in part, reversed in part, and remanded.