Donald D. BOSOLD and Ruth A. Bosold, Appellants,

v.

BAN CON, INC., Respondent.

No. C9–86–60.

Court of Appeals of Minnesota.

Sept. 2, 1986.

Stephen J. Poindexter, Poindexter, Jacobson, Stromme & Harwood, Minneapolis, for appellants.

Robert L. Meller, Jr., Norman J. Baer, Best & Flanagan, Minneapolis, for respondent.

Heard, considered and decided by FOLEY, P.J., and HUSPENI and CRIPPEN, JJ.

## OPINION

HUSPENI, Judge.

Appellants Donald and Ruth Bosold seek damages for the alleged decreased value of their townhouse arising from respondent Ban Con, Inc.'s (Ban Con) construction of a townhouse adjacent to theirs. The trial court granted Ban Con summary judgment on the basis that the Bosolds did not have a valid easement of view and that any contract to convey an easement of view was too indefinite to enforce and lacked consideration. The Bosolds appeal. We affirm.

## FACTS

On February 5, 1977, the Bosolds signed an agreement to purchase a townhouse that Ban Con was to build in Plymouth, Minnesota, on Lot 8, Block 2 of Chelsea Woods Sixth Addition. The Bosolds claim that when they signed the purchase agreement they were shown several proposed plats for adjacent townhouses and expressed their concern that the view from their townhouse would not be obstructed by future development. They claim the Ban Con salesperson did not know for certain which plat the company planned to adopt. Ban Con counters that there was only one proposed plat for the Bosolds to view at that time.

On March 15, 1977, the Bosolds had a pre-construction conference with Howard Hunt, the vice-president of Ban Con. The Bosolds allege that Hunt assured them that the view from their townhouse would not be obstructed by another townhouse that Ban Con was planning to construct on Lot 7, adjacent to the Bosolds' lot. The Bosolds asked for his assurance in writing. Hunt claims that he indicated to the Bosolds on a certificate of survey how their line of view would not be obstructed along their property line. In completing a "pre-construction conference check list", Hunt wrote:

House on Lot 7–Blk (2), to be located so as not to obstruct view from Lot 8 Blk (2). Deck Post may protrude.

Hunt considers that the subsequent construction of the Lot 7 townhouse complied with this written assurance. The checklist is signed by Donald Bosold and Hunt.

The closing on the townhouse took place on April 22, 1977, and thereafter the Bosolds took possession of the property. The warranty deed makes no reference to the Bosolds' claimed easement of view.

On about August 8, 1977, Ban Con began surveying Lot 7. The Bosolds immediately complained to Ban Con that the survey stakes indicated that the completed townhouse on Lot 7 would obstruct their view. Hunt met with the Bosolds at their townhouse and assured them that the townhouse would not block their view, but to satisfy any doubts Hunt suggested that Ban Con would partially redesign the Lot 7 townhouse. The Bosolds allege that Hunt stated that the corner of the Lot 7 townhouse would be sixteen feet from the "off-set" survey stake that was centered in front of their patio door, and that the balcony and patio doors of the Lot 7 townhouse would be built on the side opposite to their townhouse. Hunt claims that he showed the Bosolds the actual site of the building, which was eight feet from the "off-set" stake. In a letter to the Bosolds dated August 9, 1977, Hunt states:

As I indicated, we will switch the window-patio door location on the lower lever [sic] to allow the slab to be further from your view and at least partially hidden.

After the footings were laid for the townhouse, they were eight feet from the "off-set" stake.

On September 19, 1977, the Bosolds and their attorney met with Hans Hagen, the president of Ban Con. Hagen assured the Bosolds that some redesigning would be done to satisfy them. Hagen claims he told the Bosolds that he would redesign the balcony of the Lot 7 townhouse by cutting it at an angle. He claims this was done.

The Bosolds were dissatisfied with Ban Con's purported redesign of the Lot 7 townhouse and initiated this action seeking injunctive relief or, alternatively, damages. The trial court dismissed the Bosolds' motion for a temporary injunction and the Bosolds pursued their damages claim. They claim that contrary to Ban Con's assurances the Lot 7 townhouse obstructs their view and, as a result, their townhouse has depreciated in value. They assert that at the time of the pre-construction conference they would not have proceeded with the purchase of the townhouse absent Ban Con's oral and written assurances that their view would not be obstructed by the Lot 7 townhouse.

## ISSUE

Did the trial court err in granting summary judgment in favor of Ban Con on the basis that the Bosolds did not have a valid easement of view?

## ANALYSIS

In reviewing a summary judgment award, we must determine whether there are any genuine issues of material fact for trial and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). All doubts and factual inferences must be resolved in favor of the Bosolds, the nonmoving parties. *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn.1981). Viewing the evidence in the light most favorable to the Bosolds, the applicable law cannot provide the Bosolds with the relief they request.

Easements of view must satisfy the statute of frauds. Minn.Stat. § 513.04 (1984); *Berg v. Carlstrom,* 347 N.W.2d 809, 812 (Minn.1984). To satisfy the statute of frauds, a written conveyance of an interest in land must provide:

(1) A statement of the consideration; (2) an adequate description of the parties; (3) an adequate description of the land; (4) the general terms and conditions of the transaction; and (5) subscription by the vendor.

*Greer v. Kooiker,* 312 Minn. 499, 253 N.W.2d 133, 138 (1977).

We agree with the trial court that the pre-construction conference checklist is insufficient to convey an easement of view. The notation on the pre-construction checklist fails to furnish "a reasonably certain means of identification." *See Miracle Construction Co. v. Miller,* 251 Minn. 320, 323, 87 N.W.2d 665, 669 (1958). The notation does not provide a means to identify the unobstructed view to which the Bosolds claim they are entitled. Further, we cannot rely on the evidence of the parties' dealings to provide an adequate description. Extrinsic evidence cannot be used to supply a missing term to a written conveyance; it can only be used to explain an unclear term. *See Malevich v. Hakola,* 278 N.W.2d 541, 544 (Minn.1979); *Miller,* 251 Minn. at 324, 87 N.W.2d at 669. Nor can we resort to any other writings to satisfy the statute of frauds. Neither the purchase agreement nor the subsequent warranty deed refers to an easement of view, and the checklist makes no reference to any other documents. *See In re Estate of Le Bourius,* 224 Minn. 203, 208–09, 28 N.W.2d 157, 160 (1947). Even if evidence of the parties' dealings were admissible, we do not consider that it would provide an adequate description of the easement of view. In both of the Bosolds' depositions, their descriptions of the claimed easement of view are nebulous and indefinite.

We recognize that sometimes it may be difficult to describe an easement of view with any great certainty. Nevertheless, such a description must contain more than a notation that an adjacent building is "to be located so as not to obstruct view." *Cf. Highway 7 Embers, Inc. v. Northwestern National Bank,* 256 N.W.2d 271, 274 (Minn.1977).

We also note that the checklist notation fails to satisfy the statute of frauds because it does not contain a statement of any consideration. Again, in light of the principles set forth above, we cannot resort to extrinsic evidence to prove this essential part of the required writing.

Because we conclude that the claimed easement of view does not satisfy the statute of frauds, we do not address the other issues raised on appeal.[1]

### DECISION

The trial court did not err in granting Ban Con summary judgment.

Affirmed.

---

1. We do not address whether the doctrine of equitable estoppel would apply to this case, since the theory was not raised or addressed at the trial court level. *See Weiss v. Great Northern Railway Co.,* 286 Minn. 278, 282, 176 N.W.2d 109, 112 (1970).