In the Matter of the WELFARE
OF D.S.S.

No. CO–93–497.

Court of Appeals of Minnesota.

Oct. 5, 1993.

John M. Stuart, State Public Defender, Charlann E. Winking, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Norman B. Coleman, Jr., Asst. Atty. Gen., St. Paul, Julius E. Gernes, Winona County Atty., Winona, for respondent.

Considered and decided by PARKER, P.J., and HUSPENI and DAVIES, JJ.

## OPINION

PARKER, Judge.

D.S.S. appeals from the juvenile court's disposition imposing a stayed commitment to a youth correctional facility and from the court's denial of his motion to withdraw uncounseled admissions in four prior cases. He argues that the trial court violated rules of juvenile procedure in failing to inform him adequately of his right to counsel. The state contends that the juvenile was adequately advised by a social worker employed by the county, that he waived his right to counsel, and that a formal advisory was unnecessary in informal proceedings. We reverse and remand.

### FACTS

Appellant D.S.S., now 18, has appeared before the Winona County Juvenile Court in connection with seven separate petitions alleging him to have been delinquent. His allegations of procedural irregularities concern the first four cases, in which he appeared before the juvenile court without counsel. D.S.S. requested and received counsel for appearances on the last three petitions.

D.S.S. first entered the Winona County juvenile court system as a 14–year–old. At that time and in the next three petitions, the procedure was the same. He and his parents received written notice of an appointment with the Winona County Department of Court Services. The reverse side of the notice provided a printed statement of rights, including the parents' and the child's rights to an attorney. The statement also noted that if the child admitted the delinquency alleged in the petition, the court would then have the power to transfer legal custody of the child.

Following receipt of these notices, D.S.S. and his parents attended meetings with a court services officer, Patricia Weinzierl, a social worker. Weinzierl, who is not an attorney, testified at the motion hearing that she orally informed D.S.S. and his parents at these meetings of their right to counsel at any time. She also explained to D.S.S. that if he denied the charges, he had the right to a trial. It is undisputed that in each of the first four cases, D.S.S. expressly declined counsel and signed statements indicating he did not wish to speak to an attorney. D.S.S. and Weinzierl wrote disposition "contracts" requiring him to pay restitution to victims, perform community service, undergo counseling, and other such actions.

D.S.S. testified at the motion hearing that Weinzierl read him the rights from a piece of paper but did not explain them to him. He did not ask for an attorney because, he said, "I felt as though a lawyer was only for if you are definitely not guilty and you didn't do anything at all." He testified that no one explained to him exactly what he was charged with, that statements he made to police might not be admissible in court, that he had a right to a trial, and the consequences of failing to fulfill a disposition contract. D.S.S. testified, "I assumed that once I was finished [with a disposition contract] the whole thing was finished. It was put in the past or whatever."

At hearings on the petitions in each of the first four cases, D.S.S. appeared before the juvenile court without representation by an attorney. In all four cases, the court failed to advise D.S.S. of his right to counsel and failed to ascertain whether in fact D.S.S. had waived his right to counsel. In none of the first four cases was he advised by counsel of his right to an attorney. In each instance, the court asked D.S.S. if he admitted to the offense in the petition, and in each instance, D.S.S. answered, "yes." In one of the four cases, the juvenile court made an "adjudication of delinquency," and in the other three, the judge affirmed the disposition contracts in writing but took no other action.

Weinzierl testified that she urged D.S.S. to obtain an attorney for the fifth petition because "I told him that we'd be leaning toward consequences." She states in an affidavit that "I informed [D.S.S.] that if he was going to admit the charges, *my recommendation to the Court would be commitment to the Commissioner of Corrections.*" D.S.S. then obtained an attorney.

This appeal arose following the sixth and seventh petitions, for which D.S.S. had obtained counsel. D.S.S. filed a motion in November 1992 challenging the first four proceedings in which he had not requested counsel. D.S.S. moved to vacate the prior uncounseled admissions and to expunge the one adjudication, and urged the juvenile court to refrain from weighing the first four offenses in determining the disposition in the sixth and seventh petitions. At the hearing on this motion, the trial court refused to vacate the admissions or to expunge the adjudication. He stated he would ignore three of the uncounseled petitions, but that he would weigh the one uncounseled petition and adjudication in determining the disposition in this case. The court stated that D.S.S. had knowingly waived counsel for that offense, and therefore the adjudication was proper.

In February 1993, the court ordered a commitment to the Red Wing Correctional Facility for six months, but stayed commitment on the conditions that D.S.S. pay restitution, perform community service, undergo counseling, and graduate from high school.

D.S.S. filed an appeal with this court in March 1993 and filed his brief on May 19, 1993. On May 26, a week after the filing of D.S.S.'s brief, the juvenile court, citing clerical error, filed an amended order purporting to expunge the one adjudication of the first four cases. On June 18, 1993, the trial court filed a memorandum entitled "Memorandum to Files J5–92–50369, *et al.*, and Response and Clarification of Issues on Appeal." D.S.S. moved to strike this memorandum and any references to it in the state's brief.

## ISSUES

I. Should this court grant D.S.S.'s motion to strike the trial court's memorandum, filed three months after the filing of this appeal?

II. Does the trial court's expungement of an adjudication render this appeal moot?

III. Should the trial court have permitted D.S.S. to withdraw the admissions in the four uncounseled petitions?

A. Was D.S.S. adequately advised of the right to counsel?

B. Did D.S.S. waive the right to counsel knowingly, voluntarily, and intelligently?

C. Must a juvenile court strictly follow rules on advisory and waiver of right to counsel even in informal, "diversion" proceedings?

D. Did D.S.S. suffer manifest injustice from an inadequate advisory of his right to counsel?

## DISCUSSION

### I

■ We grant D.S.S.'s motion to strike the trial court's memorandum of June 1993. An appellate court reviews only issues that were raised before the trial court. *Greer v. Kooiker,* 312 Minn. 499, 511–12, 253 N.W.2d 133, 142 (1977). This trial court memorandum is not a part of the record on appeal. A trial court is not a party and may not include in the record a brief or memorandum addressed to the appellate court.[1] *See* Minn. R.Civ.App.P. 128.02, subds. 1–4 (parties may file briefs; no others may file briefs without leave of the appellate court).

### II

■ The state argues this appeal is moot because the trial court has granted the relief D.S.S. sought. We disagree.

The trial court's expungement of the adjudication only partially grants the relief D.S.S. sought in his motion before that court. D.S.S. also sought to withdraw his admissions in all of the first four petitions. The trial court did not grant this relief. D.S.S. also requested the court to ignore his first four offenses in determining the disposition in his latest petitions, and the record reveals the trial court used at least one admission to enhance the disposition. Because D.S.S. has not received the relief he sought, this case is not moot.

■ We conclude as well that the trial court did not have jurisdiction to expunge the adjudication. Upon the filing of an appeal, a trial court loses jurisdiction over the matters appealed. *State v. Barnes,* 249 Minn. 301, 302, 81 N.W.2d 864, 866 (1957). The court filed its expungement order on May 26, 1993, more than two months after D.S.S. filed his appeal. Having lost jurisdiction over this matter, the trial court no longer had authority to expunge the adjudication.

■ Finally, we note that even if the appeal were seen as moot, we would review this case because it presents issues capable of repetition but evading review. *See Elzie v. Commissioner of Pub. Safety,* 298 N.W.2d 29, 32 (Minn.1980).

### III

■ D.S.S. contends the trial court erred in failing to withdraw his admissions. We agree. D.S.S. was not adequately advised of his right to counsel, did not voluntarily and intelligently waive his right to counsel and, as a result, suffered manifest injustice.

### A. *Inadequate Advisory of Right to Counsel*

A juvenile has the right to counsel even though the juvenile justice system is a more informal system than the separate criminal justice system for adults. *See In re Gault,* 387 U.S. 1, 13–23, 41, 87 S.Ct. 1428, 1436–41, 1451, 18 L.Ed.2d 527 (1967); Minn.Stat. § 260.155, subd. 2 (1992); Minn.R.Juv.P. 4.01, subd. 1. In 1967, the Supreme Court noted the irony that although the informal, separate juvenile justice system had resulted from the most enlightened of motives, in practice, the history of the juvenile justice system had "again demonstrated that unbridled discretion, however benevolently motivated, is frequently a poor substitute for principle and procedure." *In re Gault,* 387 U.S. at 17–18, 87 S.Ct. at 1438–39.

Some scholars suggest, however, that a juvenile's right to counsel may have little meaning because juveniles do not fully understand their procedural rights. *See, e.g.,* Barry C. Feld, *Criminalizing Juvenile Justice: Rules of Procedure for the Juvenile Court,* 69 Minn.L.Rev. 141, 174–75 (1984).

■ Minnesota law reflects this concern in requiring that juveniles receive an on-the-record explanation of the right to counsel:

> A child not represented by counsel shall be advised orally by counsel, who shall not be the county attorney, or orally by the court

---

1. The memorandum contains the heading "In Court of Appeals," and is entitled "Response and Clarification to Issues on Appeal."

on the record of the right to counsel at or before any hearing on a petition.

Minn.R.Juv.P. 4.01, subd. 2.

The rule's requirement of an advisory by counsel (who is not the county attorney) or by the court assumes that an adequate explanation of the right to counsel can come only from a non-adversary attorney or the judge, both of whom must, of course, be trained in the law.

In the first four cases, D.S.S. was a child, not represented by counsel, who appeared before the court at a hearing on a petition. Contrary to the requirements of the rule, however, the child was not advised of his right to counsel orally by the court on the record or by counsel.

Instead, D.S.S. received some notice of his right to counsel from a written statement of rights and from a social worker, who is not trained in the law. Her advisory does not meet the strict requirements of the rule.

The social worker testified that she told D.S.S. that if he committed further offenses, she would recommend commitment to an institution, and that "he was facing consequences." This testimony reveals that, however benevolently motivated the social worker may have been, she was not his advocate or a neutral advisor of the kind required by the rule.

The social worker also failed to advise D.S.S. of the ramifications of admitting to the offenses, to wit, that a record would be kept of his offenses and that this record could be used to enhance the disposition of a later offense.

We note also that the state conceded at oral argument that the trial court failed to abide by Rule 4.01, subd. 2. We conclude D.S.S. received an inadequate advisory of his right to counsel.

### B. *Waiver of Right to Counsel*

■ The state next argues that even if the advisory was inadequate, D.S.S. waived his right to counsel. We disagree.

A child's waiver of the right to counsel is valid only if made in a voluntary and intelligent manner. Minn.R.Juv.P. 15.02, subd. 1.

Before there can be an adequate waiver, however, the court or counsel, who is not the county attorney, is to inform the juvenile of the right to counsel. As noted earlier, this was not done.

The rules also provide for renewal of the advisory at each hearing even if a child is purported to have waived the right to counsel:

> After a child waives the right to counsel the child shall be advised of the right to counsel, by the court on the record, at the beginning of each hearing at which the child is not represented by counsel.

Minn.R.Juv.P. 15.02, subd. 2. The court did not advise D.S.S. of his right to counsel at any time. If D.S.S. was not adequately advised of his right to counsel under Minnesota law, he could not effectively waive his right to counsel.

We further note the state at oral argument conceded that perhaps the waiver was inadequate.

We conclude that D.S.S. did not adequately waive the right to counsel.

### C. *Diversion Program*

The state contends that strict adherence to the rules is unnecessary in informal, "diversion" proceedings. We understand a "diversion" program to be an informal alternative to formal proceedings in the juvenile justice system. We note, however, that the record contains no mention of a diversion program. The first time such a program is mentioned is in the state's brief on appeal and in the trial court's June 1993 memorandum, which we have stricken from the record. Because matters not before the trial court cannot be raised for the first time on appeal, we cannot accept this after-the-fact explanation. *Greer*, 312 Minn. at 511–12, 253 N.W.2d at 142.

■ Nonetheless, we conclude that even if D.S.S. was in a "diversion" program, the informality of such a program does not justify the failure to follow procedures prescribed in the rules. The rules explicitly require an oral advisory of the right to counsel by an attorney or the court at "*any* hearing on a petition," Minn.R.Juv.P. 4.01, subd. 2, and do

not distinguish between informal or formal hearings. In all of the first four cases, there was a hearing upon a petition, but there was no advisory. Hence, the requirements of the rule came into play.

We are not to be misunderstood to say that counties cannot have diversion programs. The United States Supreme Court, although not deciding the issue, suggested in *Gault* that such programs might be appropriate. *Gault*, 387 U.S. at 31 n. 48, 87 S.Ct. at 1445 n. 48. More specifically, the Court acknowledged the possibility that formal criminal procedures may not be necessary for preliminary conferences in which the juvenile runs no risk of adjudication of delinquency or institutionalization. *Id.* at 31 n. 48, 87 S.Ct. at 1445 n. 48.

Here, in at least one of the first four cases, which ostensibly were informal diversion proceedings, D.S.S. was adjudicated delinquent. The notice sent to D.S.S. and his parents listed commitment as a possible consequence of admission of guilt. Because these "informal" proceedings carried the risk of adjudication and commitment, *Gault* requires strict adherence to criminal procedure.

Moreover, Minnesota law provides stronger protections than does *Gault* in requiring an advisory of the right to counsel at *any* hearing on a petition, regardless of the formality of the proceeding. Minn.R.Juv.P. 4.01, subd. 2; 15.02, subd. 2.

Some opponents have criticized the informality of diversion programs precisely because of the potential for abuse of a juvenile's due process rights in such informal settings. Paul R. Kfoury, *Children Before the Court* 70 (2nd ed. 1991).

We hold that regardless of whether D.S.S. participated in a diversion program, he was entitled to a formal advisory of the right to counsel under Minn.R.Juv.P. 4.01, subd. 2.

### D. *Manifest Injustice*

Finally, the state argues that D.S.S. has failed to show manifest injustice occurred. We disagree.

A motion for withdrawal of an admission of guilt requires a showing that the withdrawal is necessary to correct a manifest injustice. Minn.R.Juv.P. 21.03, subd. 3(a).

The state contends that D.S.S. suffered no harm as a result of the inadequate advisory. The state notes that D.S.S. successfully completed his disposition contracts, that he does not contend the dispositions were unfair, and that he does not contend he was innocent. Therefore, the state concludes, D.S.S. has not suffered manifest injustice.

We conclude, however, that D.S.S. suffered manifest injustice in several ways. The cumulative history of uncounseled admissions resulting after an inadequate advisory of the right to counsel constitutes a manifest injustice. Had an attorney or the court explained the right to counsel to D.S.S., it is possible this history might have been different. Upon receiving a thorough explanation of the right to counsel and the consequences of his admissions, D.S.S. might have avoided accumulating a record of offenses.

Instead D.S.S. testified that, after receiving some notice of his right to counsel by a social worker, he assumed that by admitting to the offenses and completing his contracts, there would be no record. From the ostensibly "informal" proceedings, he built up a lengthy record, with the offenses denominated as "misdemeanor," "gross misdemeanor," and "felony." This record was included in a social history shown to the trial court, and the court referred to this record at the February 1993 disposition hearing and also in its findings. Although the court stated it would not consider three of the four uncounseled admissions, the cumulative weight of D.S.S.'s record could not but affect the judgment in later petitions.

Finally, the very fact that the rules of juvenile procedure were disregarded, with the result that D.S.S. was inadequately advised of his right to counsel, is itself a manifest injustice. The juvenile justice system is expected to rehabilitate the juvenile and to teach respect for the law. An informal process in which the court system itself, however benevolently motivated, does not abide by the law, fails to inculcate that respect.

## DECISION

We reverse and order expungement of the record of the first four, uncounseled petitions. This order extends to all records pertaining to those cases and under the authority of the juvenile court. We also order withdrawal of the admissions in the first four cases. We vacate the stayed commitment to Red Wing and the February 12, 1993, disposition order. We remand for resentencing in connection with file numbers J5–92–50369, J1–92–503770, J4–92–50654, which were disposed of in the February 1993 order. In resentencing D.S.S., the juvenile court must disregard the first four uncounseled admissions and make no reference to or use of them.

**Reversed and remanded.**